## Thompson v. Farrier Industries, Inc.

464

*Jack F. Ream,* for plaintiff.
*Eugene R. Campbell* and *Donald L. Reihart,* for defendants.

BUCKINGHAM, *J.,* July 25, 1980—This matter is before the court on the preliminary objections of defendants to plaintiff's complaint in the form of a demurrer and motions for a more specific complaint. Only those grounds which have been briefed shall be considered. The rest are deemed abandoned.

The case involves a complex series of claims asserted by plaintiff, a trustee in bankruptcy, against

defendants. Plaintiff has filed a 107 page complaint with numerous, voluminous exhibits. It is impractical to set forth in detail the allegations of the complaint, but a brief summary of events should be sufficient.

From sometime in 1971 until November 7, 1977, National Central Bank (bank) and Farrier Industries, Inc. (Farrier) had extensive and complex financial dealings with each other. These transactions culminated in a multiple party transaction on November 7, 1977. On that date, due to financial debts owed to bank, Farrier transferred all its assets to bank. These assets consisted of land, improvements thereon, equipment and machinery, inventory and other miscellaneous items. On the same date the bank sold all the assets except inventory and miscellaneous items to the York County Industrial Authority which the same day executed leases of those assets with the other defendants. Also on that date the bank sold the inventory and miscellaneous assets to Coal-Tech, Inc. (Coal-Tech) and Combustion Turbine Power, Inc. (Combustion) directly.

On May 3, 1978 Farrier filed a petition in bankruptcy and was adjudicated bankrupt on May 24, 1978. On January 30, 1979 plaintiff filed a praecipe for a writ of summons and on January 23, 1980 filed the instant complaint.

Plaintiff's complaint alleges that defendants violated the Uniform Commercial Code (Bulk Transfers) of April 6, 1953, P.L. 3, as amended, 12A P.S. §6-111 [see now, 13 Pa.C.S.A. §6111], that the transaction is a fraudulent conveyance, that the transfer is a preferential transfer and that the bank's claims must be equitably subordinated.

The standards for sustaining a demurrer are well

established and quite strict. A demurrer admits every well pleaded material fact set forth in the pleading to which it is addressed and all inferences reasonably deducible therefrom, but not conclusions of law: Gekas v. Shapp, 469 Pa. 1, 364 A. 2d 691 (1976). In order to sustain a demurrer, plaintiff's complaint must indicate on its face that his claim cannot be sustained. If there is any doubt, this should be resolved against sustaining the demurrer: Vitteck v. Washington Broadcasting Co., Inc., 256 Pa. Superior Ct. 427, 389 A. 2d 1197 (1978). A demurrer cannot supply a missing fact: Matschener v. City of Pittsburgh, 36 Pa. Commonwealth Ct. 69, 387 A. 2d 954 (1978).

## I. STATUTE OF LIMITATIONS

All of defendants demur to Counts one through eight in the complaint alleging violations of the Pennsylvania Bulk Sales Act on the ground that the six month statute of limitations in the act bars plaintiff's action. Section 6-111 of the Uniform Commercial Code—Bulk Transfers, 12A P.S. §6-111 provides:

"No action under this Article shall be brought nor levy made more than six months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed, actions may be brought or levies made within six months after its discovery."

Plaintiff argues that defendants must raise this defense as new matter and not by way of a preliminary objection. Pa.R.C.P. 1017(b)(4) permits raising by preliminary objection in the form of a demurrer a defense of a nonwaivable statute of limitations or frauds which bars or destroys the right of action

and the applicability of which appears on the face of the complaint. Although there are no cases defining a nonwaivable statute of limitations there are cases resolving this problem with respect to statutes of fraud. There is no valid reason why the rationale of these cases should not be applied here.

In Brown v. Hahn, 419 Pa. 42, 213 A. 2d 342 (1965), the court decided what is a nonwaivable statute of frauds. Initially, the question depends on the specific language used in the statute. The language must operate so as to bar or destroy plaintiff's right to bring an action, as opposed to barring recovery if defendant raises the statute as a defense. Citing Leonard v. Martling, 378 Pa. 339, 106 A. 2d 585 (1954), the court found that where the statute uses the language, "no action shall be brought," the statute bars or destroys plaintiff's right to bring an action. The court held that this type of statute, so worded, constitutes a limitation on the power of the judiciary to afford any remedy.

Section 6-111 clearly shows that it is a nonwaivable statute of limitations which may be raised by preliminary objections. However, this does not resolve the issue.

Pa.R.C.P. 1017(b)(4) also requires that the applicability of the statute of limitations be apparent from the face of the complaint. A superficial examination of the complaint would seem to indicate that it does apply. The transfer took place on November 11, 1977, and the action was commenced on January 30, 1979 by a praecipe for a writ of summons. Assuming no concealment of the transfer, the statute of limitations has run. However, this action is part of the proceeding in bankruptcy for Farrier and plaintiff is the trustee in bankruptcy. Section 403, Savings Provisions of the

statute enacting the new Bankruptcy Act of November 6, 1978, 92 Stat. 2549, 2683, effective October 1, 1979, provides that:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties . . . shall continue to be governed by the law . . . as if the Act had not been enacted."

Under the prior law, in section 11(e) of the Bankruptcy Act of July 1, 1898, 30 Stat. 544, 11 U.S.C.A. §29(e), as amended, it is provided that:

"A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law *had not expired at the time of the filing of the petition in bankruptcy.*" (Emphasis supplied.)

In Sproul v. Gambone, 34 F. Supp. 441 (W.D. Pa. 1940), the court had opportunity to apply this section of the Bankruptcy Act to a claim brought by a trustee in bankruptcy alleging violations of the Pennsylvania Bulk Sales Act of May 23, 1919, P.L. 262, 69 P.S. §521 et seq. Defendant argued that since the 90 day period of limitation in the act had expired prior to suit, the trustee was barred from bringing suit. However, the petition in bankruptcy was filed before the period expired. The court held that the 90 day limitation of the Bulk Sales Act ceased to apply from the time the petition in bankruptcy was filed and the trustee's right of action was limited only by section 11(e) of the Bankruptcy Act.

In the instant case, plaintiff refers to the proceedings in bankruptcy in his complaint by name, term and docket number. Proceedings in another action are adequately incorporated by a reference to the docket number: Castle View Burial Park v. Bell Telephone Co., 367 Pa. 289, 80 A. 2d 699 (1951); Bigelow v. Lancaster, 49 D. & C. 2d 724, 20 Bucks 40 (1970). The transfer of assets occurred on November 7, 1977, and the petition in bankruptcy was filed on May 3, 1978; therefore, the petition was filed before the six months expired, and the limitation in section 6-111 of the Uniform Commercial Code—Bulk Transfers is supplanted by the two year limitation in the Bankruptcy Act. Under the Bankruptcy Act the trustee had until May 24, 1980. Plaintiff filed a praecipe for a writ of summons on January 30, 1979, making his suit timely. Accordingly, it is unnecessary to deal with the issues of concealment under section 6-111 and whether the trustee steps into the shoes of other creditors who filed suit against defendants.

## II. APPLICABILITY OF THE UNIFORM COMMERCIAL CODE—BULK TRANSFERS

The authority contends in its demurrer that the Uniform Commercial Code—Bulk Transfers does not apply to this particular transfer. The authority's basic contention is that, "the complaint fails to allege that the enterprise followed by the plaintiff's bankrupt, Farrier, was involved in an enterprise whose principal business was the sale of merchandise from stock."

Section 6-102(3) of the act provides that: "The enterprises subject to this Article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell."

Although an examination of the complaint and exhibits reveals that there ie no per se averment that Farrier is an enterprise whose principal business is the sale of merchandise from stock, looking at the entire complaint and making all reasonable inferences therefrom, Gekas v. Shapp, supra, it is clear that plaintiff alleged this element. The complaint in several places states that the inventory was valued at $568,603.84 which is about 27 percent of the ultimate purchase price. Further, the complaint and exhibits show that in several security agreements inventory was all or a substantial portion of the collateral pledged as security. In these agreements inventory is defined as goods held for sale or being processed for sale in the borrower's business. Looking at all these factors and making all reasonable inferences, it is evident that plaintiff has alleged enough to show that Farrier was an enterprise whose principal business was the sale of merchandise from stock.

Finally, it is contended by the authority that it is protected under 12A P.S. §6-110(2) which provides: "When the title of a transferee to property is subject to a defect by reason of his non-compliance with the requirements of this Article, then . . . a purchaser for value in good faith and without such notice takes free of such defect."

The authority contends it purchased for value and without noticeand that the complaint fails to allege knowledge on its part. This argument is without merit. Although the authority is technically a purchaser from a transferee, it is not such an innocent purchaser as the statute contemplates. A cursory reading of the complaint and exhibits makes clear that plaintiff is alleging that all defendants as a group worked together in structuring

this transaction and that the bank and the authority were conduits through which the assets and inventory passed to the ultimate transferee. Further, the paragraphs in the complaint detailing the authority's involvement in the transaction raise a clear inference that the authority could not have been involved without having knowledge of the total transaction. Finally, as is discussed in more detail below, the question of whether value was given is an issue of fact for the trier of fact.

## III. UNIFORM FRAUDULENT CONVEYANCE ACT

Defendants demur to counts 11 through 20 which allege that the conveyance of Farrier's assets was a fraudulent conveyance. They argue that the conveyance was not fraudulent because fair consideration was given for the assets.

Pennsylvania has adopted the Uniform Fraudulent Conveyance Act of May 21, 1921, P.L. 1045, 39 P.S. §351 et seq. Section 354 of the act provides: "Every conveyance made . . . by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made . . . without a fair consideration."

Defendants' argument that plaintiff has no standing to assert a claim under the act is without merit. Section 67(d) of the Bankruptcy Act, 11 U.S.C.A. §107(d), and section 70(e)(1) of the Bankruptcy Act, 11 U.S.C.A. §110(e)(1), clearly give the trustee in bankruptcy standing to assert a claim under the Uniform Fraudulent Conveyance Act.

They contend also that because the bank was a secured creditor the act does not apply. We see no

support for this argument in the language of the act itself or in case law. In fact, an examination of section 353, which defines fair consideration, would seem to include the transfer of secured property. Section 353 provides:

"Fair consideration is given for property or obligation: (a) When, in exchange for such property or obligation as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied; or (b) When such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

If it was intended for this section not to apply to secured property, then the act would so state. The language, "or an antecedent debt is satisfied" is broad, unqualified language that clearly includes secured property. Counsel cites no supporting case law and our research reveals no case that supports this contention.

Defendants further argue in support of their demurrer that it is obvious on the face of the complaint that "fair consideration" was given. When a demurrer is filed, the moving party in essence is saying that even accepting everything the complaint alleges as true, the plaintiff, as a matter of law, cannot recover as indicated. Section 353 of the Uniform Fraudulent Conveyance Act gives the definition of fair consideration. In subsection (a) (it does not appear that subsection (b) applies to the instant case) two requirements are set forth: 1) the property conveyed on the antecedent debt satisfied must be in good faith, and 2) must be a fair equivalent to the property exchanged by the bankrupt.

While there is no Pennsylvania case that resolves the problem, it is instructive to look at federal bankruptcy law. Section 70(d)(2), 11 U.S.C.A. §107(d(2), of the Bankruptcy Act incorporates sections 4, 5, 6, and 7 of the Uniform Fraudulent Conveyance Act. In dealing with the question of fair consideration the courts have held that whether fair consideration has been given must depend on all the circumstances of the case and fairness in every case is largely a question of fact, as to which the trier of fact must be given considerable latitude: Russell v. Tecce, 451 F.Supp. 585 (E.D. Pa. 1978); 4 Collier on Bankruptcy, §67.33. Although where the facts are undisputed and the evidence is such that reasonable men could not differ, the issue would be one of law, we do not feel that is the case here.

Lastly, the authority argues that the Uniform Fraudulent Conveyance Act does not permit the recovery of a money judgment.

The Uniform Fraudulent Conveyance Act, 39 P.S. §359, provides exclusive remedies for violations of the act. Section 359(1) provides:

"(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser: (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or (b) Disregard the conveyance, and attach or levy execution upon the property conveyed."

Plaintiff, in counts 11-20, asks the court for a money judgment against each defendant. Clearly

section 359 does not permit plaintiff to seek this type of remedy. However, if a plaintiff states a course of action, but fails to meet a technical requirement of pleading, he will be given leave to amend his pleading. Judgment will not be entered when the defect is easily correctable by amendment without prejudice to the other party: Com. ex rel. Saunders v. Creamer, 464 Pa. 2, 345 A. 2d 702 (1975); Lynch v. Wolfinger, 163 Pa. Superior Ct. 405, 62 A. 2d 95 (1948); 2 Anderson Pa. Civ. Prac. §§ 1017.93, 1017.181.

## IV. EQUITABLE SUBORDINATION

In counts 23 and 24, plaintiff seeks to recover a money judgment against National Central Bank because the bank became heavily involved with the internal affairs of the bankrupt and the bank's conduct was intentionally designed to protect its interest to the detriment of other creditors. Plaintiff further alleges that such conduct placed the bank in the position of an insider rather than a secured creditor. The bank has demurred to these counts but presents no legal argument to sustain its demurrer. Although we can find no legal basis for plaintiff's unusual claim, we decline to dismiss it at this time without more than the bank's mere assertion that it can find no authority to support these counts.

## V. MOTION FOR MORE SPECIFIC PLEADING

All defendants have filed motions for a more specific pleading. The only question under Pa.R.C.P. 1017(b)(3) is whether the complaint is sufficiently clear to enable defendants to prepare their defense: Com. v. City of Jeannette, 9 Pa. Commonwealth Ct.

306, 305 A. 2d 774 (1973); Gross v. United Engineers & Constructors, Inc., 224 Pa. Superior Ct. 233, 302 A. 2d 370 (1973).

The authority requests that the complaint be amended to state with particularity whether plaintiff is alleging actual fraud as well as constructive fraud under the Uniform Fraudulent Conveyance Act. We think a fair reading of the complaint discloses allegations of both actual and constructive fraud. The remainder of its motion shall also be denied as being more appropriate for discovery.

The bank seeks more information on the "equitable subordination" claim. We think there is sufficient information on this to put the bank on notice as to what it has to defend. As to other matters, the bank and the other defendants may resort to discovery.

### ORDER

And now, July 25, 1980, the preliminary objections of defendants to the complaint are dismissed with leave to file answers thereto within 60 days of the date of this order.

An exception is granted to defendants.