345 A.2d 702

COMMONWEALTH of Pennsylvania ex rel.
Clarence V. SAUNDERS, Appellant,

v.

J. Shane CREAMER, Attorney General Com-
monwealth of Pennsylvania, et al.

Supreme Court of Pennsylvania.

Argued April 9, 1975.

Decided Oct. 3, 1975.

Michael D. Fioretti, Philadelphia, for appellant.

J. Andrew Smyser, Deputy Atty. Gen., Harrisburg, Allen C. Warshaw, Deputy Atty. Gen., Robert P. Kane, Atty. Gen., for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, Clarence Saunders, is an inmate in the State Correctional Institution at Graterford. The appellees are the former attorney general of Pennsylvania and the superintendent, deputy superintendent, and correctional counselor at Graterford. The proceedings from which this appeal arises began when appellant filed in the Commonwealth Court[1] a pro se complaint charging that the appellees had violated his constitutional rights by denying him admission to the community treatment services and temporary home furloughs programs[2] and

---

1. The Commonwealth Court had original jurisdiction of this case by virtue of the Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401, 17 P.S. § 211.401 (Supp.1974).

2. Prerelease programs for prison inmates, such as the community treatment services and temporary home furloughs programs, are authorized by the Act of July 16, 1968, P.L. 351, No. 173, § 1 et seq., as amended, 61 P.S. § 1051 et seq. (Supp.1974). The regulations governing prerelease programs, promulgated by the Bureau of Correction pursuant to Section 3 of the Act of 1968, *supra*, state the purposes and functions of prerelease programs as follows:

   "(a) Since the Bureau of Correction is charged with protecting society through the control and rehabilitation of offenders, a variety of prerelease programs were planned and designed to

seeking relief under the Federal Civil Rights Act of 1871. See 17 Stat. 13, 42 U.S.C. §§ 1983, 1985.[3]  The ap-

> provide a continuum of opportunities for exercising self-control and demonstrating responsibility as individual needs dictate. Use of these prerelease programs provides certain individuals an opportunity outside correctional facilities to [pursue] gainful employment, vocational or technical training, academic education, and specialized counseling or therapy, in addition to wholesome family experiences.

> "(b) Prerelease programs are an integral part of the more comprehensive treatment programming which begins for a resident in a regional or Commonwealth correctional institution.  Prerelease programs enhance the possibilities inherent in the sentencing process by providing channels to constructive social adjustment and psychological growth not available in regional or Commonwealth correctional institutions.

> "(c) In every instance, prerelease programs are a part of the correctional process and serve to support the goals of the courts, the Board of Probation and Parole, the community, and the Bureau of Correction."  37 Pa.Code § 95.112.

The regulations define "community treatment center residency" as follows:

> "A program which is operated separate and distinct from the regional or Commonwealth Correctional Institutions.  Community treatment center residency provides programs from a community-based residence under the jurisdiction of the Community Treatment Services Division of the Bureau of Correction. Community treatment centers are staffed by corrections counselors and house managers on a 24-hour, seven-day-a-week basis.  This program [provides] community living facilities for those former residents of regional and State correctional institutions who no longer require intensive custody.  The community treatment center programs are individualized such that a resident is enabled to enter into employment, educational pursuits, vocational-technical training, or specialized services as the needs dictate.  Residents participating in the community treatment center program are required to pay rent for their quarters and assume costs of personal expenses.  By participating in this type of a program, the resident facilitates his own transition to parole and subsequent release."  37 Pa.Code § 95.-111.

"Temporary home furlough" is defined as follows:

> "The authorized leave of a resident from a Commonwealth correctional institution for a period not to exceed seven days for the purpose of furthering the rehabilitative programs of a resident."  *Id.*

**3.**  The Civil Rights Act of 1871 provides for civil action remedies for denials of civil rights and for conspiracies to deny federal civil action remedies for denials of civil under color of state law. The Commonwealth Court expressed some doubt as to whether

pellees responded with preliminary objections in the nature of a demurrer and a motion for a more specific complaint. The Commonwealth Court sustained the demurrer and dismissed appellant's complaint. 11 Pa.Cmwlth. 160, 312 A.2d 454 (1973). This appeal followed.[4]

Appellant's complaint avers the following facts: Appellant has been incarcerated for seven years and has an excellent conduct record. Between May of 1971 and August of 1972 he repeatedly applied for admission to the community treatment services program, and during September and October of 1972 he made four requests for temporary home furloughs. All of these applications and requests were either ignored or denied without explanation. Between February 2, 1972, and September 28, 1972, eighty-one inmates, all of whom entered Graterford after appellant, were admitted to the community treatment services program. On October 3, 1972 appel-

actions pursuant to these statutes may properly be brought in state courts. It is apparent that the overwhelming majority of such actions have been brought in federal courts. There is nothing in the statutes, however, which limits jurisdiction of such actions to federal courts, and state court jurisdiction of such cases has recently been upheld in the following cases: *New Times, Inc. v. Arizona Board of Regents,* 110 Ariz. 367, 519 P.2d 169 (1974); *Dudley v. Bell,* 50 Mich.App. 678, 213 N.W.2d 805 (1973); *Holt v. City of Troy,* 78 Misc.2d 9, 355 N.Y.S.2d 94 (N.Y.Sup.Ct.1974). See also *International Prisoners' Union v. Rizzo,* 356 F.Supp. 806 (E.D.Pa.1973), in which an action brought under 42 U.S.C. §§ 1983, 1985, and 1986 was dismissed on grounds that the claims raised had been litigated in a prior state court proceeding. On the question of state court jurisdiction of claims under federal civil rights statutes, the court said:

"We observe, as did the Court of Common Pleas, that a state court could not refuse to enforce a claim under the Civil Rights Act because state court judges are bound by federal law when applicable. See *Testa v. Katt,* 330 U.S. 386, 393, 67 S.Ct. 810, 91 L.Ed. 967 (1947); U.S.Const. Art. VI, Cl. 2. Although state courts have rarely exercised jurisdiction over Section 1983 claims, they are not precluded from doing so wherever exclusive jurisdiction is neither expressly or impliedly granted to the federal courts. See *Claflin v. Houseman,* 93 U.S. 130, 136, 23 L.Ed. 833 (1876)." 356 F.Supp. at 810.

4. Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp.1974).

lant filed a formal "complaint" requesting a hearing upon the denial of his applications for participation in prerelease programs. This request for a hearing was denied.

The complaint further alleges that the appellees, acting in bad faith and under color of state law, were administering the community treatment services and temporary home furloughs programs in a discriminatory manner and were conspiring to deny appellant participation in these programs, all in violation of his rights to the equal protection of the laws and to due process of law as guaranteed by the fourteenth amendment to the Constitution of the United States. Appellant's prayer for relief sought a declaratory judgment, actual damages in the amount of $10,000, punitive damages in the amount of $10,000 and an injunction against further violations of his constitutional rights.

In passing upon the sufficiency of a complaint, we must bear in mind

> "that preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 247 A.2d 566 (1968); *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A.2d 491 (1955). To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. Where any doubt exists as to whether or not the preliminary objections should be sustained, that doubt should be resolved by refusing to sustain the objections. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960); *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A.2d 262 (1951)." *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 291, 259 A.2d 443, 449 (1969).

Appellant's complaint is written in broad and general terms and is far from a model of clarity. It is doubtful that it complies with Rule 1019 of our Rules of Civil Procedure, which requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Nevertheless we are unable to conclude with confidence that appellant would not be entitled to relief if he proved the facts which are averred.

Section 3 of the Act of 1968 *supra,* provides in part that "[t]he Bureau of Correction shall establish rules and regulations for granting and administering release plans and shall determine those inmates who may participate in any plan. If any inmate violates the rules or regulations prescribed by the bureau, his release privileges may be withdrawn." Pursuant to this statutory directive, the Bureau of Correction has promulgated regulations establishing various prerelease programs and governing the selection of inmates for participation in these programs. *See* 37 Pa.Code §§ 95.21–95.27 (community treatment services program), §§ 95.31–95.42 (temporary home furloughs), §§ 95.111–95.128 (release status). The selection of participants for the community treatment services program and temporary home furloughs is made by the deputy superintendent for treatment services, subject to final approval by the superintendent, upon the recommendations of the applicant's support team, caseworker, housing officer, work supervisor, educational supervisor, and other appropriate staff. 37 Pa.Code §§ 95.127(a), 95.128(a). The regulations establish minimum requirements for eligibility for all prerelease programs, but also provide that "[m]eeting of the minimum eligibility criteria for prerelease status does not mean the resident shall automatically be cleared for participation in one or more prerelease programs. Other serious considerations, such as the staff's evaluation of the progress of the individual to-

ward treatment goals, the relevancy of the particular prerelease program to the treatment plan of the individual, and the backlog of eligible residents awaiting participation in a limited program shall be weighed carefully." Among the factors to be considered are the applicant's "previous offense and incarceration history; work, family, educational and religious history, marital history and status; past and present life style in its social context, and history of mental health disorders." 37 Pa.Code § 95.121(a)(3).

A reading of the applicable regulations in their entirety leaves no doubt that the institutional staff, deputy superintendent for treatment services, and superintendent are left with much discretion; the decision as to whether a particular inmate shall participate in prerelease programs depends in large part upon the subjective evaluation which these officials make of the individual characteristics, problems and needs of an inmate. Thus, it would seem that successful challenges to decisions upon applications for admission to prerelease programs would be rare indeed.

The administrative determination may not, however, be conclusive. If it were shown that the institutional officials were in fact exercising their broad discretion in a discriminatory fashion or that they were disregarding the guidelines set forth in the regulations, a fourteenth amendment violation would be made out. Appellant would then be entitled to relief pursuant to the Civil Rights Act of 1871 although his remedies might be limited if it were to be determined that the official action involved falls within some form of official privilege or immunity. See *Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973); 3 K. Davis, Administrative Law Treatise § 26.06 (1958); see generally *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The failure to provide for some type of hearing upon applications for participation in prerelease programs may also

constitute a denial of procedural due process. See *Wolff v. McDonell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prison disciplinary proceedings); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole revocation); *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973) (probation revocation). *See also* the plurality opinion by Mr. Justice O'Brien, the concurring opinion of this writer, and the concurring and dissenting opinion of Mr. Justice Eagen, joined by Mr. Chief Justice Jones, in *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973) (parole revocation). See generally *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

Because a fair reading of appellant's complaint leads to the conclusion that he has imperfectly pleaded facts which, if properly pleaded and proved, may entitle him to relief, the demurrer should not have been sustained.[5] The order dismissing the complaint is vacated and the case is remanded to the Commonwealth Court with a *procedendo*, including consideration of the appellees' motion for a more specific complaint.

Mr. Chief Justices JONES, Mr. Justice EAGEN and Mr. Justice O'BRIEN dissent and would affirm the order of the Commonwealth Court.

**5.** See *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed. 652 (1972) in which the Court reversed an order dismissing a complaint under the Civil Rights Act of 1871 seeking damages for physical abuse while in prison. As to the sufficiency of the complaint, the Court said:

"Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 [84] (1957)."