Thomas **WRIGHT**

v.

Julius T. **CUYLER**, individually and in his official capacity as Superintendent of the State Correctional Institution at Graterford.

Thomas **WRIGHT**

v.

William B. **ROBINSON**, Commissioner of the Bureau of Corrections of the Commonwealth of Pennsylvania, Julius T. Cuyler, Superintendent of the State Correctional Institute at Graterford, Pa., Daniel T. Sims, Deputy Superintendent of Treatment of the State Correctional Institute at Graterford, Pa., Lawrence Reid, Director of Treatment of the State Correctional Institute at Graterford, Pa.

Civ. A. Nos. 78–1520, 78–2301.

United States District Court, E. D. Pennsylvania.

July 6, 1981.

---

Robert T. Cohen, Philadelphia, Pa., for plaintiff.

Carl Vaccaro, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff in these consolidated civil rights actions, a state prisoner, alleges that defendants, various officials of the Pennsylvania Bureau of Corrections, violated his constitutional rights by denying his application to participate in a pre-release program. Wright seeks declaratory and injunctive relief prohibiting defendants from further violations of his rights, and compensatory and punitive damages. Defendants now move to dismiss certain of Wright's claims for failure to state a claim upon which relief can be granted.[1]

The allegations in Wright's complaint, which I must accept as true for purposes of resolving defendants' motion, *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), are as follows. Wright is serving a state sentence of 13½ to 27 years. In June, 1977, Wright applied to prison authorities for a home furlough, pursuant to the Bureau of Corrections pre-release program for sentenced offenders. 37 Pa.Code § 95.11, *et seq.* Wright's application was denied on the ground that he had too much time remaining on his minimum sentence. At the time, Wright had served six years and nine months of his minimum sentence. Wright thereafter wrote to defendant Robinson, Commissioner of the Bureau of Corrections, who acknowledged that Wright had, as of July 26, 1977, met two of the minimum criteria for participation in pre-release programs; Wright had served at least nine months in a state institution and he had served more than one-half of his minimum sentence (Complaint, CA 78–1520, Exhibit 1). Robinson advised Wright to remain patient while prison authorities processed his request.

In August 1977, Wright re-applied for the pre-release program, and once more was rejected. At that time, Wright was informed that defendant Reid, Director of Treatment at Graterford, would not approve a furlough request for Wright until only four years remained on Wright's minimum sentence.[2] In February 1978, Wright conferred with defendant Sims, Deputy Superintendent at Graterford, and was told that he would be a security risk if he were granted a home furlough because of the amount of time remaining on his minimum sentence, then in excess of five years. Shortly thereafter, Wright commenced these actions.

---

1. This case is presently before me after remand by the Third Circuit Court of Appeals, which vacated my earlier order dismissing Wright's complaint for failure to exhaust state remedies. Plaintiff contends that defendants have waived their right to move for dismissal for failure to state a claim, because they did not raise this defense in their earlier motion to dismiss for failure to exhaust state remedies. Rule 12(g), F.R.Civ.P. Defendants did in fact move to dismiss for failure to state a claim, but, as the Court of Appeals recognized, I did not reach this issue in dismissing Wright's complaint. *Wright v. Cuyler*, 624 F.2d 455, 458 (3d Cir. 1980). Under these circumstances, defendants cannot be deemed to have waived the right to raise this defense by motion.

2. As I construe Wright's complaint, there is no allegation that defendants applied an across-the-board policy of denying furloughs if an inmate had more than four years remaining on his minimum sentence. At argument, Wright's counsel contended that discovery may show this to be the case, and further represented that he could not definitively rule out such a possibility, inasmuch as Wright filed the complaint *pro se*. If discovery establishes that my construction of the complaint is erroneous, counsel may move to amend the complaint. For purposes of this motion, my reading of the complaint is that the defendants denied Wright pre-release status because they believed that in his particular case he would be a security risk if granted a furlough when more than four years remained on his minimum.

The criteria for participation in pre-release programs are set forth in 37 Pa.Code § 95.113, and Wright has satisfied the majority of them. As noted above, Wright has served the required amount of time on his minimum sentence, § 95.113(b)(1); he has no existing detainers, (b)(2); he has the favorable recommendation of his counselor, work supervisor, housing officer, and education supervisor, (b)(3); he has neither a Class I nor multiple Class II misconducts, (b)(4); and finally, he has approval from the Graterford medical officer, (b)(5). Wright lacks only the approval of the Deputy Superintendent for Treatment and Operations, (b)(3), defendant Sims, and the approval of the Superintendent, (b)(6), defendant Cuyler,[3] both of whom refused to approve his application on the ground that he was a security risk.

Wright further contends that he is considered a model inmate at Graterford, has held various positions of trust at the institution, and since June 1973, has worked outside the prison itself at the institutional farm, where security measures are by nature much less stringent than inside the prison.

## I. Due Process Claim

First, Wright contends that defendants violated his due process rights by arbitrarily denying him participation in the pre-release program. Defendants move to dismiss this claim on the ground that Wright does not have a liberty interest in participating in the pre-release program, with the result that the protections afforded by the due process clause of the Fourteenth Amendment do not apply.

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Court held that as a general rule parole

decisions by penal authorities do not implicate a constitutionally protected liberty interest, and that in the absence of a state statute which creates a liberty interest by conferring a "protectible expectation of parole," the safeguards imposed by the due process clause do not apply.[4] 442 U.S. at 11, 99 S.Ct. at 2106. *See also Connecticut Board of Pardons v. Dumschat,* —— U.S. ——, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

In *Greenholtz,* the Court reviewed a Nebraska statute which established a general policy favoring parole of eligible prisoners, except under certain limited circumstances prescribed by the statute. The Court held that the statute provided an "expectancy of release" which was entitled to at least some measure of constitutional protection, 442 U.S. at 12, 99 S.Ct. at 2106, but noted that due process "'is flexible and calls for procedural protections as the particular situation demands.'" *Id.* It held that an inmate applying for parole under the Nebraska statute was not entitled to a formal hearing, and was not entitled to an explanation of the "evidence" upon which the board decided to deny parole. *Id.* 442 U.S. at 14–15, 99 S.Ct. at 2107–08.

Here, the Pennsylvania statute creating the pre-release program, 61 Pa.Stat.Ann. § 1051 *et seq.,* does not on its face give rise to any expectation of pre-release. Section 1051 provides that the Bureau of Corrections shall establish centers from which "effective" pre-release programs can be run. Section 1052 provides that the Commissioner of Corrections "may" transfer to pre-release programs any prisoner not sentenced to death or life imprisonment, and sets forth certain conditions for participation in the program. Section 1053 requires that

---

**3.** In addition, participation in pre-release program requires the approval of the sentencing court, (b)(7), and approval of the regional staff of the area to which release will occur, (b)(8). In both instances, Wright's application was denied before it reached the stage where these approvals would be sought.

**4.** Although *Greenholtz* involved parole, rather than the kind of pre-release program at issue in

the instant case, the Court noted that there is no essential difference among decisions involving probation, parole, or institutional rehabilitation. 442 U.S. at 8, 99 S.Ct. at 2104. Presumably, therefore, the same constitutional considerations apply whenever an exercise of professional judgment by correctional officials is at issue.

the Bureau shall promulgate regulations for administering the program, and that inmate participants must obey the regulations. While conceding that the statute itself does not contain language which may be construed as creating a liberty interest, Wright contends that the program regulations promulgated under the statute, when interpreted in light of the purposes of the pre-release program, do give rise to a liberty interest.

Wright relies upon *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980), *cert. denied sub nom.*, *Anderson v. Winsett*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981).[5] In *Winsett*, a Delaware state prisoner was denied participation in work release programs because public outrage over his crime, the murder of a Delaware state trooper, sparked vigorous public protests when Winsett applied for work release. The district court held that although Winsett met all of the criteria for the work release program, the final decision to allow participation rested within the discretion of prison officials, with the result that Winsett did not have a liberty interest in the work release program. 443 F.Supp. 1369, 1373 (D.Del. 1978). The Court of Appeals reversed, holding that the discretion of prison officials was not unbridled, but rather must be exercised consistent with the underlying purposes of the work release program. 617 F.2d at 1006–1007. The court noted that in processing applications for the work release programs, prison officials were required to adhere to an administrative framework of committee review which specified criteria to be applied in selecting inmate participants. More importantly, the court noted that under the Delaware statute governing the operation of the Department of Corrections, the work release program was required to further the policy established by the legislature that

Persons committed to the institutional care of the Department shall be dealt with humanely, with effort directed to their rehabilitation, to effect their return to the community as safely and promptly as practicable.

617 F.2d at 1006.

The court found that Delaware prisoners had a liberty interest in having their applications for work release evaluated in light of the purposes of the program, and ruled that prison officials denied Winsett due process in denying his application because of negative public reaction to it. *Id.* at 1008.

■ As noted above, in this case, the Pennsylvania statute creating the pre-release program cannot be construed as creating a liberty interest. Moreover, Wright has not cited, nor has my research revealed, any general statutory provisions establishing an overall policy for the rehabilitation of prisoners like that in *Winsett*. Therefore, the issue is whether the regulations governing Pennsylvania's pre-release program reflect an ultimate purpose behind the program which serves as an implicit limitation on the discretion of prison officials sufficient to create a protectible liberty interest. Having reviewed the regulations, I conclude that they do not limit the discretion of prison officials in such a way as to create a liberty interest on the part of prospective participants in the program.

The purpose of the pre-release program is set forth at 37 Pa.Code § 95.112:

The Bureau of Correction is charged with protecting society through the control and rehabilitation of offenders. In this context a variety of prerelease programs have been designed to provide a continuum of opportunities for inmates to demonstrate the exercise of self-control and individual responsibility. Use of these prerelease programs gives qualified

---

**5.** The decision which the Commonwealth contends is dispositive of this case, *Little v. Robinson*, CA 79–3003 (E.D.Pa. Jan. 31, 1980) (unpublished memorandum), has been vitiated by *Winsett*. In *Little*, I held that the discretion vested in prison officials by the pre-release statute and regulations was so broad that the

program could not give rise to a liberty interest on the part of prospective participants. Three months later, in *Winsett*, the Court of Appeals made clear that the existence of broad discretion in prison officials is not dispositive of whether a liberty interest exists. 617 F.2d at 1006–07.

inmates an opportunity outside correctional facilities to pursue gainful employment, vocational education or technical training, academic education, and specialized counseling or treatment in addition to wholesome social experiences.

The program is described as an "opportunity" for "qualified" inmates, without any suggestion that pre-release is a preferred mode of treatment. The regulations acknowledge the Bureau's mission of rehabilitation, but there is no clear statement of policy favoring "return to the community as safely and promptly as practicable," as was the case in *Winsett*. Elsewhere, the regulations stress that "[s]atisfying the eligibility criteria for prerelease transfer does not mean the inmate will automatically be permitted to participate in one or more prerelease programs. Other serious considerations such as the evaluation of the staff of the progress of the inmate, the relevancy of the particular prerelease program to the reintegration of the inmate, and the availability of space shall be taken into consideration." 37 Pa.Code § 95.113(a). At argument, counsel for Wright contended that this language constitutes a limit upon the discretion of prison officials, because it lists rehabilitative factors to be considered, thereby excluding arbitrary decisions by prison officials. I construe this language as emphasizing the discretion accorded to prison officials, because it makes the point that inmates have no entitlement to participation in pre-release programs even if the minimum criteria are met. I cannot conclude that, simply because the Pennsylvania pre-release program was meant to serve the purpose of rehabilitation, every applicant to the program has a liberty interest in participating. To accept this proposition would mean that whenever a state establishes a rehabilitation program it would be subject to court review to determine if decisions were made consistent with rehabilitation goals, and the Supreme Court has warned that such an expansive view of due process might inhibit states from experimenting with such programs. *Greenholtz, supra,* 442 U.S. at 13, 99 S.Ct. at 2107.

Moreover, because rehabilitation programs involve "subjective" and "predictive" decisions, administrators of such programs must necessarily be allowed broad discretion in discharging their duties. *Id.* In establishing its pre-release program, the Pennsylvania Bureau of Corrections has made clear that the officials charged with its operation are vested with broad discretion, and that no inmate is automatically entitled to participate even if he meets the minimum criteria. In light of this explicit reservation of discretion over operation of the program by the Bureau, the courts should be hesitant to declare a liberty interest, unless there is a plain statement of legislative policy circumscribing the discretion of penal authorities like that in *Winsett*.

In summary, other than a cursory reference to rehabilitation as one purpose of the pre-release program, there is nothing in Pennsylvania law to suggest that the discretion of prison authorities in administering the program is limited in any way which might create a liberty interest.[6] Accordingly, Wright does not have a reasonable expectation of participation in the program subject to the protections of due process, and defendants' motion to dismiss the due process claim for failure to state a claim will be granted.

## II. The Equal Protection Claim

Wright's equal protection claim is not clearly stated, but it appears that his contention is that he has been denied equal

---

6. Construction of the statute by the state courts is also relevant to the determination whether a liberty interest exists. *Greenholtz, supra,* 442 U.S. at 12, 99 S.Ct. at 2106; *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 648 (1976). In *Commonwealth ex rel. Saunders v. Creamer,* 464 Pa. 2, 345 A.2d 702 (1975), a prisoner challenged the rejection of his application to participate in the pre-re- lease program as discriminatory and capricious. Without reaching the merits, the Pennsylvania Supreme Court held that it was error for the lower court to dismiss the complaint on a demurrer, because it was conceivable that he might have stated some facts on which he was entitled to relief. The court did not, however, definitively construe the pre-release statute or regulations as creating a liberty interest.

protection of the laws in two ways. First, he contends that prison officials rigidly adhered to the regulations governing pre-release in deciding his application, while in other cases they have overlooked the regulations and permitted participation by inmates who did not qualify. Second, Wright contends that prison officials have granted pre-release status to other prisoners who were at least an equal, if not a worse, security risk than he is, while denying his own application.

■ The crux of Wright's equal protection claim then is that the defendants have been arbitrary and unfair in granting privileges within the inmate population. As a member of this court held in *United States ex rel. Wakely v. Commonwealth of Pennsylvania*, 247 F.Supp. 7, 14 (E.D.Pa.1965), if a prisoner "is denied a privilege enjoyed by his fellow inmates he has stated a complaint cognizable under the federal Constitution. For without regard to whether the state must actually afford these privileges, if it does so generally but discriminates against plaintiff he has been denied equal protection of the law as guaranteed by the Fourteenth Amendment." *Accord, Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979); *Nadeau v. Helgemoe*, 561 F.2d 411, 416 (1st Cir. 1977); *Williams v. McCall*, 531 F.2d 1247, 1248 (5th Cir. 1976).

■ Defendants contend that Wright has failed to state a claim because he has failed to allege class-based discrimination or consideration of constitutionally impermissible factors in deciding his application for pre-release. This argument lacks merit, because a denial of equal protection can exist even where there is no invidious discrimination, or no interference with fundamental rights. The gravity of the plaintiff's claim affects only the standard of review.

A state prisoner need not allege the presence of a suspect classification or the infringement of a fundamental right in order to state a claim under the Equal Protection Clause. The lack of a fundamental constitutional right or the absence of a suspect class merely affects the standard of review; it does not destroy the cause of action. "[I]n the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose."
*Durso v. Rowe, supra*, 579 F.2d at 1372, quoting *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976).

The Court of Appeals adopted this approach in *Hodges v. Klein*, 562 F.2d 276 (3d Cir. 1977). There, suit was brought challenging the confinement of some prisoners in a behavioral control unit separate from the prison population generally. The court held that the prisoners had stated a claim under the Constitution, and that the standard of review was whether the state's classification of the plaintiffs as different from the general prison population furthered a legitimate state interest. 562 F.2d at 278. The court also made clear that even under this limited standard of review, there must be a factual basis upon which the district court can evaluate the rationality of the state's actions. *Id.*

■ Defendants further contend that if Wright is permitted to proceed with his equal protection claim, this court will become involved in substituting its judgment in rehabilitative matters for that of correctional professionals, who, as noted above, must be given wide latitude in discharging their duties. *Greenholtz, supra.* Whenever a court is faced with a constitutional challenge to the conduct of prison officials, there is a risk that the court will become too deeply involved in matters of prison administration and invade the province of those officials. In a case controlled by a "lower level" standard of review, however, that risk is minimized, because the scope of the court's inquiry is limited. The issue raised by Wright's equal protection claim is not whether the defendants' rejection of his application for pre-release was penologically sound, but whether it was reasonable in light of Wright's allegations that defendants selectively enforce the regulations, and

have granted pre-release status to other prisoners who are demonstrably worse security risks. Whether this court agrees with defendants' decision is irrelevant, so long as there is a rational basis for it. In short, the function of the court is not to review defendants' professional opinion on a matter involving rehabilitation, but to ensure that in denying Wright's application they were in fact exercising their professional judgment, and not discriminating against him for reasons unrelated to the rehabilitative process.

Finally, defendants contend that because of the broad discretion vested in them, Wright cannot possibly show that the denial of his application was for any reason other than that he was a security risk. I agree with defendants that Wright has a heavy burden to carry. However, the probability of ultimate success on the merits is not relevant on a motion to dismiss, where the plaintiff's allegations must be accepted as true, and the defendants have established no record setting forth the reasons for their denial of Wright's application.

In the absence of an articulated purpose for the distinctions drawn here, we cannot indulge in supplying an imaginary purpose or basis for the classification . . . and thereby preclude plaintiffs from showing that such an "apparent" basis does not actually exist. . . . In this appeal the question is not whether plaintiffs will ultimately succeed in proving their claim that the classification by defendants lacks a rational basis, but rather whether or not plaintiffs are entitled to present evidence in support of their claim.

*French v. Heyne, supra,* 547 F.2d at 999. *See Hodges v. Klein, supra.* Accordingly, defendants' motion to dismiss Wright's equal protection claim for failure to state a claim upon which relief can be granted will be denied.

### III. *Eighth Amendment Claim*

Wright also contends that defendants' denial of his application to the pre-release program constitutes cruel and unusual punishment, in violation of the Eighth Amendment. Defendants have not moved to dismiss this claim, and therefore I will not address it here.