William D. Reider, Petitioner *v.* Commonwealth of Pennsylvania, Bureau of Correction et al., Respondents.

Submitted on briefs October 9, 1985, to President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MAC-PHAIL, DOYLE, COLINS and PALLADINO.

*William D. Reider,* petitioner, for himself.

*LeRoy S. Zimmerman,* Attorney General, with him, *Amy Zapp,* Deputy Attorney General, and *Allen C. Warshaw,* Deputy Attorney General, Chief, Litigation Section.

OPINION BY JUDGE MACPHAIL, December 6, 1985:

William D. Reider (Petitioner) has filed a petition for review addressed to our original jurisdiction seeking relief[1] from the actions of the Bureau of Correc-

---

[1] Petitioner seeks relief by way of declaratory judgment, compensatory judgment and the issuance of a preliminary and a permanent injunction. Petitioner asks that we hold, *inter alia,* that the

tions (Respondent)[2] denying Petitioner prerelease status. Petitioner avers that in denying him prerelease status, Respondent has violated his constitutional rights. Presently before the Court are Respondent's preliminary objections in the nature of a demurrer and a motion for a more specific pleading.

Preliminary objections in the nature of a demurrer are deemed to admit all well-pleaded facts and inferences reasonably deduced therefrom but not conclusions or averments of law. *Madden v. Jeffes*, 85 Pa. Commonwealth Ct. 414, 416 n. 1, 482 A.2d 1162, 1164 n. 1 (1984). Additionally, the allegations of a pro se complaint, such as we have here, are held to a less stringent standard than that applied to the formal pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972). If a fair reading of the petition leads to the conclusion that Petitioner has pleaded facts which may entitle him to relief, the preliminary objections will not be sustained. *Commonwealth v. Creamer*, 464 Pa. 2, 345 A.2d 702 (1975).

We first turn to the question of our original jurisdiction over Respondents Gillis, Zimmerman and Zumpetta. Respondents have filed a preliminary objection to the exercise of our original jurisdiction over these named Respondents on the basis that they are employees and not officers of the Bureau. The scope of our original jurisdiction is governed by 42 Pa. C. S. §761(a), which provides in part:

---

Commonwealth's statutory prerelease program has been misinterpreted by Respondents to the prejudice of Petitioner's constitutional rights.

[2] Also named as Respondents are Glen R. Jeffes, Acting Commissioner of the Bureau of Correction; Frank D. Gillis, Executive Assistant to the Commissioner; Charles H. Zimmerman, Superintendent at the State Correctional Institution at Huntingdon (SCI-H); and Anthony W. Zumpetta, Deputy Superintendent at SCI-H.

(a) General Rule—the Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) against the Commonwealth government, including any officer thereof, acting in his official capacity. . . .

An officer of the Commonwealth "performs statewide policymaking functions and . . . [is] charged with the responsibility of independent initiation of administrative policy regarding some sovereign function of state government." *Opie v. Glascow, Inc.,* 30 Pa. Commonwealth Ct. 555, 559-60, 375 A.2d 396, 398 (1977). On the other hand, a Commonwealth employee "functions on an essentially local or regional basis . . . [and] performs subordinate ministerial functions." *Id.*

In *Madden v. Jeffes,* 85 Pa. Commonwealth Ct. 414, 482 A.2d 1162 (1984), we held that we have original jurisdiction over the actions against the Commissioner of the Bureau acting in his official capacity. We also pointed out that:

the superintendent of a state correctional institution, who is not charged with the requisite kind of statewide policy making responsibility, . . . is an employee rather than an officer. . . . However, the claim against [the] superintendent . . . is ancillary to the claims against Commonwealth parties and, therefore, under 42 Pa. C. S. §761(c), we may also exercise original jurisdiction over that claim despite the superintendent's status as employee.

*Id.* at 417, 482 A.2d at 1165. Accordingly, inasmuch as we have original jurisdiction over Acting Commissioner Jeffes, we will exercise original jurisdiction over the claims against the named Commonwealth employees as ancillary to the claims against Acting Com-

missioner Jeffes. Respondents' preliminary objections in this regard are overruled.

Prelease[3] programs for prison inmates, such as the temporary home furlough[4] program, are provided pursuant to the Act of July 16, 1968 (Act), P.L. 351, *as amended,* 61 P.S. §§1051-1054. Pursuant to that authority, Respondent promulgated rules and regulations for granting and administering the prerelease programs. The regulations found at 37 Pa. Code §95.113,[5] provided in pertinent part that:

[3] Prerelease was defined at 37 Pa. Code §95.111 as follows:

A transfer which can be achieved by inmates of state correctional institutions and regional correctional facilities after qualifying in accordance with the criteria, procedures, and policies set forth in §§95.113 and 95.117 (relating to minimum criteria for prerelease transfer; and staff responsibilities). Prerelease transfer permits participation in the following programs: work release; educational/vocational training release; temporary home furlough; and community services.

Release and Prerelease Program Regulations are now found at 37 Pa. Code §§94.1-94.7. Chapter 94 does not provide a separate definition of prerelease.

[4] Temporary home furlough was defined at 37 Pa. Code §95.111 as follows:

The authorized leave of an inmate from a Commonwealth correctional facility for a period not to exceed seven consecutive days for the purpose of furthering an inmate's rehabilitative programs. The inmate is required to return to the correctional facility at a designated time after the furlough.

A similar definition can now be found at 37 Pa. Code §94.2(b).

[5] A similar provision is now contained in 37 Pa. Code 94.3(b). Section 94.3(b) provides, in pertinent part:

No inmate may be granted Prerelease transfer for any purpose unless the inmate satisfies all of the criteria in this section. Satisfying the eligibility criteria for prerelease transfer does not mean the inmate will automatically be permitted to participate in prerelease programs. Other considerations such as the staff's evaluation of the inmate's progress, the relevancy of the particular prerelease program

No inmate may be granted prerelease transfer for any purpose unless he satisfies all of the criteria in this section [minimum criteria for prerelease transfer]. *Satisfying the eligibility criteria for prerelease transfer does not mean the inmate will automatically be permitted to participate in one or more prerelease programs.* Other serious considerations such as the evaluation of the staff of the progress of the inmate, the relevancy of the particular prerelease program to the reintegration of the inmate, and the availability of space shall be taken into consideration. (Emphasis added.)

Evaluating an inmate for prerelease status is a matter of skilled administrative discretion. *Commonwealth ex rel. Saunders v. Creamer,* 11 Pa. Commonwealth Ct. 160, 312 A.2d 454 (1972), *rev'd on other grounds, Commonwealth v. Creamer,* 464 Pa. 2, 345 A.2d 702 (1975). "[T]he decision as to whether a particular inmate shall participate in prerelease programs depends in large part upon the subjective evaluations which [the institutional staff, deputy superintendent for treatment services, and superintendent] make of the individual characteristics, problems and needs of an inmate." *Commonwealth v. Creamer,* 464 Pa. at 8, 345 A.2d at 702.

Respondent denied Petitioner's application to the temporary home furlough program based on the nature of Petitioner's offense, the time remaining on Petitioner's minimum sentence and the conclusion by the SCI-H staff that prerelease status would be inappropriate for Petitioner because of its informal structure.

---

to the inmate's reintegration, the safety of the community and the victim of the inmate's crime, and the availability of space will be taken into consideration.

Petitioner alleges that he has met all of the minimum eligibility requirements and therefore he has a liberty interest in prerelease status, relying upon *Winsett v. McGinnes,* 617 F.2d 996 (3rd Cir. 1980), *cert. denied,* 449 U.S. 1093 (1981) for the proposition that the Act and the applicable regulations create a liberty interest in prerelease status. Petitioner's reliance is misplaced. In *Winsett,* a civil rights action was brought by a Delaware prisoner claiming that Delaware prison officials violated his constitutional rights by denying his application for work release based on the officials' fear of adverse public reaction. The *Winsett* court noted that there is no constitutionally mandated right to enter a discretionary parole release program, but acknowledged that state statutory law *might* provide an expectancy of release entitling the prisoner's application to some measure of constitutional protection. 617 F.2d at 1005; *see also Inmates of the Nebraska Penal Correctional Complex v. Greenholtz,* 442 U.S. 1, 12 (1979). "The existence of a statutorily created liberty interest depends upon the statutory language and 'must be decided on a case-by-case basis.' ". *Winsett,* 617 F.2d at 1005, quoting *Greenholtz,* 442 U.S. at 12. The court found that under the Delaware statute, prisoners had a liberty interest in having their work release applications evaluated consistent with the underlying purposes of the work release program.

The Pennsylvania Act and regulations were evaluated in *Wright v. Cuyler,* 517 F. Supp. 637 (E.D. Pa. 1981). The court first noted that the Act "does not on its face give rise to any expectation of prerelease." *Id.* at 640. The court stated that the language in Section 95.113 requiring examination of other serious considerations aside from the minimum eligibility criteria emphasized "the discretion accorded to prison

officials, because it makes the point that inmates have no entitlement to participation in pre-release programs even if the minimum criteria are met." 517 F. Supp. at 642. The court continued:

> Moreover, because rehabilitation programs involve 'subjective' and 'predictive' decisions, administrators of such programs must necessarily be allowed broad discretion in discharging their duties. . . . In establishing its pre-release program, the Pennsylvania Bureau of Corrections has made clear that the officials charged with its operation are vested with broad discretion, and that no inmate is automatically entitled to participate even if he meets the minimum criteria. In light of this explicit reservation of discretion over operation of the program by the Bureau, the courts should be hesitant to declare a liberty interest, unless there is a plain statement of legislative policy circumscribing the discretion of penal authorities like that in Winsett.
>
> In summary, other than a cursory reference to rehabilitation as one purpose of the pre-release program, there is nothing in Pennsylvania law to suggest that the discretion of prison authorities in administering the program is limited in any way which might create a liberty interest.

*Id.* (Citations and footnotes omitted.) The court concluded that the inmate did not have a reasonable expectation of participation in the prerelease program under Pennsylvania law. *Id.* We agree that the Act gives Respondent a wide degree of discretion and does not create a liberty interest in prerelease status. We hold that inasmuch as Petitioner has no protected liberty interest in the Commonwealth's prere-

lease program, his petition for review has failed to state a cause of action upon which we can grant the relief Petitioner seeks.

We deem it necessary to reject Petitioner's equal protection claim as well. Petitioner alleges that he has been denied prerelease status while other inmates similarly situated of like background have been enjoying prerelease status. In essence, Petitioner claims that Respondent unconstitutionally discriminated against him among inmates of like background. We must reject this claim. As the court in *Rowe v. Cuyler,* 534 F. Supp. 297 (E.D. Pa.), *aff'd,* 696 F.2d 985 (1982) noted,

> no two prisoners, being different human beings, will possess identical backgrounds and characters. Indeed, it is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*Id.* at 301. In order to sustain Respondent's preliminary objections to the equal protection claim, however, there must be a rational basis for Respondent's decision to deny Petitioner prerelease status, *Wright v. Cuyler,* and that basis must be among those reasons rationally related to the programs' objectives, *Rowe v. Cuyler.* Petitioner asserts that Respondent "arbitrarily" considered his convictions and history in denying his application. We disagree. In our opinion, Respondent was not discriminating against Petitioner in considering his conduct but was duly exercising its professional judgment. Accordingly, Respondent's preliminary objection in the nature of a demurrer to Petitioner's equal protection claim will

also be sustained. *Compare Wright v. Cuyler* (defendants' motion to dismiss equal protection claim for failure to state a claim upon which relief can be granted denied where defendants have established no record setting forth the reasons for their denial of prerelease status).

For the foregoing reasons, we will sustain Respondent's preliminary objection in the nature of a demurrer and dismiss the petition.[6]

### ORDER

Respondents' preliminary objection as to jurisdiction is overruled. Respondent's preliminary objections that Petitioner failed to state a claim upon which relief can be granted are sustained. Petitioner's petition is accordingly dismissed.

---

[6] Respondents have also requested this Court to strike that part of the Petition for Review which seeks an award of monetary damages, asserting that Respondents are immune from such an award.

While it is not clear, Petitioner seems to be alleging that the Respondents must reimburse him the monies he would have earned had his prerelease application been granted, and these monies would be deposited in his inmate's account which is in the possession or control of Respondents. However, as noted from our conclusion that Petitioner does not have a liberty interest in prerelease status and has not stated an equal protection claim, Petitioner is not entitled to receive any monies as reimbursement.