**Tim Lee ADAMS, Plaintiff,**

v.

**Ralph G. McALLISTER and M. Jeffrey Hoaster, Defendants.**

Civ. A. No. 1:CV–90–752.

United States District Court, M.D. Pennsylvania.

Jan. 15, 1992.

**244**

Tim Lee Adams, pro se.

Linda Cadden Barrett, Office of Atty. Gen., Harrisburg, Pa., for Ralph G. McAllister.

John G. Knorr, III, Office of Atty. Gen., Harrisburg, Pa., for M. Jeffrey Hoaster.

## MEMORANDUM

RAMBO, District Judge.

Before the court is the motion for summary judgment of defendants Ralph G. McAllister and M. Jeffrey Hoaster. The motion has been fully briefed and is ripe for disposition.

*Background*

In January 1983, plaintiff Tim Lee Adams was tried and convicted in the Dauphin County Court of Common Pleas of several counts of receiving stolen property, one count of threatening a public official, and a count involving the sale of methamphetamines. After Adams' conviction, defendant M. Jeffrey Hoaster, a Dauphin County parole agent, prepared a presentence report, as is policy in the state/county court system. As part of his investigation in formulating the report, Hoaster spoke to defendant Ralph G. McAllister, a Pennsylvania State Police trooper who was involved in the investigation, arrest and prosecution of plaintiff Adams. McAllister provided a significant amount of information he asserts that he gleaned from, among other sources, confidential informants, witness and victim interviews, personal observation, surveillance, a review of

state police investigative files and consultation with other officers.

Plaintiff contends that many of these statements, which Hoaster placed in the report, were false and defamatory, and could not have been obtained from sources other than McAllister's imagination. According to plaintiff's complaint, Hoaster also placed a number of his own defamatory statements in the presentence report.

Plaintiff was sentenced in November 1983 and sent to the State Correctional Institution at Huntingdon. In May of 1989, plaintiff states that he found out about the allegedly libelous statements contained in the report from a counselor at the prison. According to Adams, the counselor also represented that these statements had been used by prison officials as reason to deny him institutional status advancements and privileges such as furloughs.

In March 1990, plaintiff filed the present complaint pursuant to 42 U.S.C. § 1983 in the Dauphin County Court of Common Pleas, alleging that the misstatements contained in the presentence report amounted to a violation of his right to equal protection under the 14th Amendment.[1] Plaintiff also brought state law claims sounding in defamation, false light, and intentional infliction of emotional distress. Defendants removed the case to this court.

Defendants have moved for summary judgment based on a number of arguments. As the court feels that plaintiff has not stated a claim under the equal protection clause, the court will dismiss that federal claim. The court also finds that defendants are blanketed by the cloak of sovereign immunity with regard to the state law claims, and will grant summary judgment with regard to them as well.

*Discussion*

 The standards for the award of summary judgment under Federal Rule of Civil Procedure 56 are well known. As the Third Circuit Court of Appeals recently capsulized:

---

1. Plaintiff had also filed a previous suit in this court against some 17 defendants, including defendant McAllister, stemming from the circum-
stances surrounding his arrest and conviction. *See* Civil No. 85–0092. This court dismissed that suit in 1989.

Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 [247], 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson* [477 U.S. at 249], 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 [586], 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the nonmoving party, the nonmoving party may not simply sit back and rest on the allegations in his complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court will consider the defendants' motion under these standards.

 The equal protection clause of the fourteenth amendment to the United States Constitution guarantees that state governments will not "deny to any person within its jurisdiction the equal protection of the laws." Plaintiff styles his claim under this clause thusly: that defendants' actions

with regard to the presentence report—i.e. inserting deliberate lies into it—caused plaintiff to be portrayed in a false light at Huntingdon and that the staff at Huntingdon relied on these statements to deny plaintiff privileges similarly situated inmates were granted. *See* Complaint ¶¶ 16 and 19.

 A plaintiff does not necessarily have to allege that he is the victim of class-based discrimination or that defendants relied on impermissible factors in denying a right or privilege in order to state a claim under the equal protection clause. Whether a suspect classification is involved—e.g. race—establishes the standard of review. If no suspect class or fundamental right is implicated, then a court would look to whether the actions which result in unequal treatment are rationally related to a legitimate state purpose. *Wright v. Cuyler*, 517 F.Supp. 637, 643 (E.D.Pa.1981) (citing *United States ex rel. Wakeley v. Pennsylvania*, 247 F.Supp. 7, 14 (E.D.Pa.1965) and *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir.1978)). However, in any case, some sort of purposeful discrimination must be involved. *E & T Realty v. Strickland*, 830 F.2d 1107, 1113–14 (11th Cir. 1987) (citing cases) (in case not involving a suspect class, district court decision to permit plaintiff to proceed to trial vacated because of failure to require plaintiff to show intentional discrimination), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988); *see also Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982) (incorrect application of prison transfer regulations).

Discriminatory purpose, however, implies more than intent as violation or intent as awareness of consequences. It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. *Shango*, 681 F.2d at 1104.[2] This requirement would therefore also apply to the individual alleging unfair treatment.

---

**2.** The court wishes to point out that there is a line of case law which holds that there is no

cause of action where the discrimination alleged is based on personal, and not class-based, ani-

As the court sees it, Adams has two glaring problems with his equal protection claim. First, he has tendered absolutely no evidence which would lead one to believe or even infer that defendants McAllister and Hoaster intended: (1) to lie; (2) in the context of a presentence report; and (3) so that Adams would be denied certain privileges while incarcerated. The most he has shown is that there is some evidence available to dispute the contentions made in the presentence report. However, even if every claim in the report was untrue, Adams could not proceed to trial with an equal protection claim without some evidence that defendants knew of the falsehoods and concocted the stories so that he would be denied privileges later.

Second, the injuries complained of—denial of certain privileges such as furloughs—are wrapped up in the area of discretionary penal decisions, an area where courts have traditionally been loath to tread. To permit Adams' claim to go forward, this court would be forced to second guess whether prison officials made the correct decision in denying plaintiff's privileges and whether the decision would have been different had they known that some of the allegations in the presentence report were untrue or at least contested. In *Rowe v. Cuyler*, 534 F.Supp. 297 (E.D.Pa.1982), *aff'd*, 696 F.2d 985 (3d Cir.1982), an Eastern District court noted that:

> [T]he three factors mentioned [by plaintiff as having been improperly considered] are but a small cluster out of a galaxy of considerations which might legitimately figure in a decision to grant or deny pre-release status. . . . This is unavoidable, for no two prisoners, being different human beings, will possess

identical backgrounds and characteristics. Indeed, it is difficult to believe that any two prisoners could ever be considered "similarly situated" for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.

*Rowe*, 534 F.Supp. at 301. *See also Wright v. Cuyler*, 517 F.Supp. 637, 640–42 (E.D.Pa. 1981) (pre-release program does not create any liberty interest in prisoners as officials are vested with broad discretion); *United States ex rel. Outlaw v. O'Leary*, No. 88 C 5122, 1989 WL 31018, at *4, 1989 U.S. Dist. LEXIS 3489, at *9 (N.D.Ill. March 29, 1989) (inmate's argument that because other inmates with similar convictions had been paroled shows that denial of his application was arbitrary and capricious was rejected); *United States ex rel. King v. McGinnis*, 558 F.Supp. 1343, 1347 (N.D.Ill.1983), *disapproved on other grounds*, 734 F.2d 1193 (7th Cir.1984). In the present case, Adams has brought forth no evidence that the allegations in the presentence report that he alleges are untrue (e.g. that he was a member of the Pagans motorcycle gang) swung the tide against him in the denial of the various privileges, or that absent consideration of these factors he would have been granted the privileges.[3] This court is certainly not willing to speculate as to an outcome or second guess penal authorities absent clear evidence indicating a different result.

Plaintiff has, therefore, not brought forth sufficient evidence to support the requirements of an equal protection claim.

---

mosity. *See Huebschen v. Department of Health and Social Servs.*, 716 F.2d 1167, 1171 (7th Cir. 1983); *Handley v. Phillips*, 715 F.Supp. 657, 673 (M.D.Pa.1989); *Gray v. Lacke*, 698 F.Supp. 750, 755 (W.D.Wis.1988), *aff'd in part and rev'd in part on other grounds*, 885 F.2d 399 (7th Cir. 1989). Here, Adams' complaint offers no theory as to why the two defendants would lie, only that they did. The court is not, therefore, prepared to throw out plaintiffs § 1983 claim on this basis, as other courts have permitted prisoner's to proceed with claims based on officials'

arbitrary and capricious behavior in the denial of privileges.

3. In fact, it appears that prison officials did consider factors other than the disputed statements to which plaintiff cites. A letter from William J. Love, Acting Superintendent at SCI–Huntingdon, dated January 14, 1991, states that plaintiff's "rather notorious involvement in a burglary ring" and refusal to admit remorse for the crimes for which he was convicted were considered along with other factors. Plaintiff's Exhibit M.

Accordingly, the court will dismiss this claim.

 The only claims left in the suit now are grounded in state tort law. In 1 Pa. Cons.Stat. § 2310, the Pennsylvania General Assembly conferred on all "officials and employees (of the Commonwealth) acting within the scope of their duties" sovereign immunity which is inapplicable only in certain prescribed circumstances. None of these limited categories where the Commonwealth has waived immunity is applicable to the present circumstances. *See* 42 Pa.Cons.Stat. § 8522. Moreover, it is clear from the record that both defendants were acting on behalf of the Commonwealth and in their official capacities as employees of the Commonwealth when they allegedly committed the acts complained of in this suit.

Plaintiff argues that defendants were by definition acting outside the scope of their duties because he has alleged that they acted with malice in incorporating lies about plaintiff into the presentence report. He cites several Pennsylvania decisions standing for this proposition. *See, e.g., Acker v. Spangler,* 92 Pa.Cmwlth. 616, 500 A.2d 206 (1985); *Lynch v. Johnston,* 76 Pa.Cmwlth. 8, 463 A.2d 87 (1983). What plaintiff fails to do is tender any evidence of his allegation of malice. While he may survive a motion to dismiss with an allegation alone, by the time summary judgment motions are filed he must be ready to come forward with solid evidence supporting his allegations.

In Pennsylvania, "malice" in the context of a libel claim is defined as "publication" of a statement either with knowledge of its falsity or with reckless disregard of its falsity. *Smith v. Greyhound Lines, Inc.,* 614 F.Supp. 558 (W.D.Pa.1984), *aff'd without op.,* 800 F.2d 1139 (3d Cir.1986). "Malice" is not demonstrated by negligence, carelessness, bad judgment or inaccuracy in the preparation of the allegedly defamatory document. *Raffensberger v. Moran,* 336 Pa.Super. 97, 485 A.2d 447 (1984). Here, plaintiff has come forward with absolutely no evidence showing knowledge of falsity or reckless disregard on the part of defendants which might defeat the immunity conferred by § 2310.

Accordingly, the court is satisfied that these state law claims should be dismissed as defendants are immune from liability.