Philip J. GAHAGAN, Sr., on behalf of himself and all others similarly situated,

v.

The PENNSYLVANIA BOARD OF PROBATION AND PAROLE, William Forbes, Paul Descano, John Jefferson, and Verdell Deans, as members of the Parole Board, and Individually, and Ralph Corbin, Vicki Weisel, and James Arnett, as agents of the Parole Board, and Individually, and Northampton County Prison Board, Marshall Brown, Eugene Giunta and Louis Guida, as members of the Prison Board, and Individually, A. S. DiGiacinto and Robert Olander, as employees of the Prison Board, and Individually.

Civ. A. No. 77–1576.

United States District Court, E. D. Pennsylvania.

Feb. 13, 1978.

Eugene K. Twining, Allentown, Pa., for plaintiff.

John D. DiGiacomo, Easton, Pa., for North Hampton County Prison Board, et al.

D. Bruce Hanes Asst. Atty. Gen., for Pennsylvania Board of Probation and Parole, et al.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff, a former inmate at the Northampton County Prison, (the Prison) filed suit under 42 U.S.C. §§ 1983 and 1985(3) and 28 U.S.C. §§ 1343(3), 2201, 2202, 2281, and 2284, against the Northampton County Prison Board (the Prison Board), and its members and certain employees, and the Pennsylvania Board of Probation and Parole (the Parole Board) and its members and certain employees. Plaintiff initially relied upon 42 U.S.C. § 1981, but has since admitted that § 1981 applies only to actions for racial discrimination. He contends instead that this action also lies under § 1986.

Plaintiff was incarcerated in the Prison from May 24, 1974, to October 24, 1975, at which time he was paroled. In his complaint against the Prison Board, plaintiff alleges that certain employees, A. S. DiGiacinto and Robert Olander, subjected him to various acts of discriminatory treatment, including: denial of participation in a work

release program; denial of furlough; wrongful and malicious withholding from the Parole Board information which would have enhanced plaintiff's chances for parole in May of 1975, when he first became eligible; denial of the opportunity to consult a doctor of his own choice at his own expense regarding a constant pain in his back; reduction of prison pay from $50.00 to $30.00 without justification and with intent to harass. Plaintiff accuses the Prison Board of tolerating such conduct and other pernicious acts by not properly punishing culpable employees, despite notice of their wrongful conduct.

Regarding the Parole Board, plaintiff alleges that the Board had knowledge that plaintiff possessed assets with which he could have made restitution to the victims of the embezzlement for which he was convicted and imprisoned; knowing also that these assets were subject to rapid deterioration; arbitrarily denying parole in spite of this knowledge; subjecting plaintiff to humiliation through a degrading interview by defendant Vicki Weisel regarding personal sexual matters; wrongful and arbitrary arrest and detention by defendant James Arnett after plaintiff's parole.

Contending that these actions caused him great pain and suffering, and great financial loss through the deterioration of his assets he seeks damages and declaratory relief, as well as a declaration by a three-judge court that the Pennsylvania Probation and Parole Act, 61 P.S. § 331.1 *et seq.* is unconstitutional.

The Prison Board, on behalf of its members and employees, moves to dismiss the complaint, contending that the complaint fails to state a claim upon which relief can be granted. The Parole Board, on behalf of its members and employees, also moves for dismissal, and for summary judgment.

### The Motion of the Prison Board

The Prison Board contends that failure to allow participation in either work release or furlough is not an infringement of a constitutional right, no matter how arbitrary the decision; that withholding of information is not a violation of plaintiff's civil rights, especially since there is no indication that inaccurate information or dishonest statements were communicated to the Parole Board and that failure to provide proper medical care is not an infringement of a constitutional right.

Defendants also contend that the Prison Board is not a "person" within the purview of the Civil Rights Act of 1871, and for that reason the Board members also cannot be liable. Defendants maintain that they are entitled to a good-faith defense because of their quasi-judicial immunity, as well. Furthermore, it is contended that since there is no indication of direct personal involvement of the Board members, the complaint must be dismissed as to them.

The Prison defendants cite *Sanno v. Preiser*, 397 F.Supp. 560 (S.D.N.Y.1975) to support their contention that denial of work release and furlough participation is not an infringement of a constitutional right, no matter how arbitrary or capricious. That case does not so hold. Instead, the *Sanno* Court held that a refusal to permit a prisoner to participate in work release and furlough programs because of the vicious nature of the offense, the prisoner's extensive prior record, his prior use of drugs and his pattern of poor community adjustment was not arbitrary and therefore not a denial of equal protection under the law. Plaintiff therein could not argue that the factors considered were erroneous or ill-founded.

In the instant case, plaintiff is not contending that the basis for denial of these rights was erroneous or ill-founded, but that the decision was arbitrary and capricious, i. e., it had no basis at all. Such a factual allegation was held in *Saunders v. Creamer*, 464 Pa. 2, 345 A.2d 702 (1975), to assert grounds upon which plaintiff could recover. Therefore, it is necessary for the instant defendants to assert the basis for denial of participation in the work release and furlough programs. Once they do so, of course, the Court will not question the wisdom of or factual basis for their decision. A federal court, except in very excep-

tional circumstances, does not possess supervisory power over state prison officials. *United States v. Blierley*, 331 F.Supp. 1182 (W.D.Pa.1971). Federal courts are, as a general rule, reluctant to inquire into the administration of state prisons. *United States ex rel. Verde v. Case*, 326 F.Supp. 701, (E.D.Pa.1971). Prison officials have wide discretionary authority to make reasonable rules and regulations for the operation of prisons. *Roach v. Kligman*, 412 F.Supp. 521 (E.D.Pa.1976), *Wilson v. Prasse*, 325 F.Supp. 9, 12 (W.D.Pa.1971), *affirmed*, 463 F.2d 109 (3d Cir. 1973).

■ There was statutory and regulatory authority controlling the granting of home furloughs, which is discussed at length in the learned and thorough opinion in *United States of America ex rel. Williams v. Cuyler*, C.A. No. 77–1797 (Oct. 18, 1977). However, in the instant case the allegation is that no regulations were followed and that the denial of work release and furlough was completely arbitrary and thus an abuse of discretion. Unlike the *Williams* Court, this Court does not have the benefit of an affidavit by defendants or any other evidence establishing the basis for denial of furlough.[1] Therefore, on the present record, we have no alternative but to deny the motion to dismiss pending further developments.[2]

Plaintiff also alleges that DiGiacinto and Olander deliberately withheld information from the Parole Board that would have enhanced his chances for parole in May of 1975. The Prison defendants argue that "there is no constitutionally protected right to have prison officials communicate every facet of plaintiff's life in the prison to the Parole Board in light of the fact that they did recommend him for parole". This is not a proper ground for dismissal, since plaintiff disputes the assertion that he was recommended for parole and instead alleges that DiGiacinto and Olander, in collusion with defendant Weisel conspired to obstruct his right to parole. However, we will otherwise grant the motion to dismiss this portion of the complaint because, for reasons that will be discussed subsequently, we have found that the denial of parole was not improper.

■ Likewise, the allegation of improper denial to the plaintiff of the opportunity to consult a doctor of his choice at his own expense must also be dismissed. To establish a constitutional violation actionable under the Civil Rights Act, denial of medical care must be more than mere neglect or carelessness which could arguably constitute malpractice under state law, and must be such deliberate, intentional indifference as to constitute unnecessary and wanton infliction of pain. See *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).

■ Defendants contend that plaintiff's claim for damages for reduction of his prison pay should be dismissed pursuant to *Bryan v. Werner*, 516 F.2d 233 (3d Cir. 1975). That case held that an inmate's expectation of keeping a particular prison job

[1]. In an effort to move in the alternative for summary judgment, defendants submitted affidavits with statements by individual defendants that they never conspired to deprive anyone of their civil rights and that they always acted in good faith. These are conclusory statements, not factual assertions. These affidavits do not furnish evidence as to the actual bases for defendants' actions. When such bases are established, the Court will examine the evidence and the Court will conclude whether or not the defendants conspired to deprive plaintiff of his civil rights and whether or not the defendants acted in good faith.

[2]. There is authority for the proposition that if an inmate seeks to *compel* release through the furlough program that such an action is actually in the nature of habeas corpus proceedings and that state administrative remedies must be exhausted. See *United States ex rel. Williams v. Cuyler*, C.A. # 77–1798 (Oct. 18, 1977). Such a ruling does not apply to this case, however, because plaintiff is seeking damages, not seeking to obtain release, having been released on parole. Thus, we cannot consider dismissal for failure to exhaust state remedies. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

is not a "property" or "liberty" interest entitled to protection under the due process clause. We agree that this case controls and will dismiss this portion of plaintiff's complaint.

We also agree with defendants that the complaint should be dismissed against the Northampton County Prison Board because it is not a "person" within the purview of the Civil Rights Act. See *Thompson v. Burke*, 556 F.2d 231 (3d Cir. 1977). However, this holding does not warrant dismissal of the actions against the Board members, who may be liable as individuals. Likewise, the quasi-judicial immunity of the Board members, which applies to adjudicatory duties, is not properly raised at this juncture. Nor is the good faith qualified immunity for executive officers properly before us. We do not have on record the bases for the actions of any of the Prison defendants regarding any of the matters set forth in the complaint. Thus we cannot tell if the acts complained of were adjudicatory in nature or whether they were performed in good faith. These matters are more properly raised in summary judgment motions supported by exhibits.[3]

However, in order to be liable, the members of the Prison Board, as supervisors of DiGiacinto and Olander, must have actual knowledge of the subordinates' acts and acquiesce in them or must directly participate in them. Such personal knowledge can be found if there was a history of such episodes. *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974). See also *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

The complaint does not allege such participation. There are no indications that the Board members had any specific knowledge of the acts complained of, nor is it alleged that the Board participated in such acts. Plaintiff does make a variety of very general allegations that seek to indicate a corrupt situation in the Prison of which the Prison Board should have been aware. These allegations include: charging excessive prices in the prison store, and seeking to limit inmates to one phone call per month (¶ 56), systematically ignoring prisoners' grievances (¶ 55), writing reports of rehabilitation and vocational programs that are sheer fabrication (¶ 58), generating hate and rebellion through lies and favoritism (¶ 59), leaving themselves open to successful litigation in federal court (¶ 56) and suffering a mass escape (¶ 56).

This general caustic language, while painting a picture of a poorly run prison, does not allege a systematic deprivation of constitutionally protected rights and liberties. Even if the Board is aware of poor prison management, it cannot be inferred that the Board was aware of actual civil rights violations.

There is some indication that the Board might have known of a pattern of arbitrary and discriminatory grants and denials of work release and furlough leaves. In paragraph 25 plaintiff lists six instances of grants or denials of work releases and furloughs which are indicated as being very poor decisions. However, these incidents do not indicate that there was a pattern of systematic constitutional violations that would have given the Prison Board personal knowledge of such misconduct, in which they acquiesced. These incidents would only tell the Board that work releases and furloughs are sometimes granted and sometimes denied, that there is no concrete pattern to such grants or denials and that perhaps there was an occasional lack of wisdom in one or another of these decisions. This level of knowledge is hardly that called for by *Bracey v. Grenoble* to impose liability on a superior for acts of subordinates. Perhaps the individuals involved in these incidents could show that they were subjected to arbitrary treatment in violation of the Civil Rights Act, but the mere existence of these incidents does not create a pattern of conduct so pervasive as to permit the Court to assume that the Prison Board had

---

**3.** As mentioned, the conclusory affidavits filed by the individual defendants are inadequate for this purpose. See Footnote 1, *supra.*

sufficient knowledge of the deprivation of constitutional rights to be liable.

Thus, the complaint will be dismissed as to the Prison Board members as well as to the Prison Board.

### The Parole Board

 The Parole Board properly notes that three-judge courts are no longer available to judge the constitutionality of a state statute unless the constitutionality of apportionment of Congressional or state legislative districts is involved. 28 U.S.C. § 2284(a), as amended, now reads:

"(a) A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."

Thus, a three-judge court is required under certain provisions of the Civil Rights Act of 1964 and the Voting Rights Act of 1965. See Wright, *Law of Federal Courts*, p. 214. It is not available for the relief requested in this action, namely, declaration of the Pennsylvania Probation and Parole Act as unconstitutional.

 Furthermore, we find that the statute is constitutional. See *United States ex rel. Horne v. Pennsylvania Board of Parole*, 234 F.Supp. 368 (E.D.Pa.1964). In a hearing to determine suitability for parole, a prisoner is not entitled to an evidentiary or adversary hearing, the opportunity to present witnesses or documentary evidence, the right to confront and cross-examine witnesses or to interrogate Parole Board members, the right to examine his record or the right to rebut information militating against parole. Such rights are associated with adversary hearings, and the Parole Board is not an adversary of the prisoner. In fact, it is in the Board's interests to secure the release of qualified inmates. See *Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa.1974).

Plaintiff in this case is not alleging improper revocation of parole, so it is doubtful that he can contest the Act's revocation provisions in light of the Due Process requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, (1972). However, it is notable that in *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the Court extended the right to a due process hearing to convicted parole violators as well as technical parole violators. Thus, the Act, as it has been interpreted by Pennsylvania courts, supplies every bit of the requirements of *Morrissey* if not more.

Furthermore, we note that the Act, in sections 331.19 and 331.21, sets forth specific requirements for granting parole.[4] Thus,

4. Those sections read as follows:

"§ 331.19 Investigation of circumstances of offenses and character and history of prisoner; matters considered in granting parole

It shall be the duty of the board, upon the commitment to prison of any person whom said board is herein given the power to parole, to investigate and inform itself respecting the circumstances of the offense for which said person shall have been sentenced, and, in addition thereto, it shall procure information as full and complete as may be obtainable with regard to the character, mental characteristics,' habits, antecedents, connections and environment of such person. The board shall further procure the stenographic record, if any, of the trial, conviction and sentence, together with such additional information regarding the crime for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history and his complete criminal record, as far as the same may be known, to be investigated and reported. All public officials having possession of such records or information are hereby required and directed to furnish the same to the board upon its request and without charge therefor. Said investigation shall be made by the board so far as may be practicable while the case is recent, and in granting paroles the board shall consider the nature and character of the offense committed and any recommendation made by the trial judge as well as the general character and history of the prisoner.

The board shall, in all cases, consider the recommendations of the trial judge and of the district attorney and of each warden or superintendent, as the case may be, who has had charge of an applicant, each of whom is directed to submit to the board his recom-

such a decision cannot be arbitrarily made in keeping with this statute.

 The courts have also upheld the provisions of the Act governing arrest and detention of parole violators. See *United States ex rel. Burgess v. Lindsey*, 395 F.Supp. 404, (E.D.Pa.1975). Taking all these matters into account, we hold that the Act, as it has been construed by the courts, is not unconstitutional.

 The Parole Board itself cannot be sued because it is not a "person" under the Civil Rights Act. See *Thompson v. Burke, supra*. Furthermore, Parole Board members and probation officers are entitled to a qualified immunity in which they are immune from suit if they acted in good faith. *Id.*

 Unlike the Prison defendants, the Parole Board defendants have furnished an exhibit which describes the bases for their actions. The exhibit, which consists of documents from the file of Philip Gahagan, clearly indicates that parole was denied him in May of 1975 because of his refusal to participate in therapy for alcohol addiction and his need for further counseling and treatment, as well as educational and vocational training. The documents also indicate concern with plaintiff's "unrealistic attitude", particularly concerning acceptance of authority.

We cannot conclude as a matter of law that denial of parole based on these factors was done arbitrarily or in bad faith. Thus, we will grant defendants' motion for summary judgment as it relates to the allegation that plaintiff was wrongfully denied parole.

 Concerning the Weisel interview, the Court has been furnished an affidavit in which Weisel states that all questions she used in her interview were routine. The four questions she specifies are:

"a. Have you ever had veneral (sic) disease?

b. Have you ever had a homosexual relationship?

c. When did you first have your first heterosexual relationship?

d. Have you ever used prostitutes?" Weisel affidavit, ¶ 10.

These questions appear to be oriented toward determining what, if any, danger or difficulty plaintiff would likely experience upon release on parole because of his sexual proclivities. They may or may not be wise questions, but we cannot possibly hold that they were arbitrary or in bad faith. We will therefore grant defendants' motion for

---

mendation and the reasons therefor, with respect to each parole application.

\* \* \* \* \* \*

"331.21 Power to parole; refusal of parole at expiration of minimum term; recommitment and reparole

The board is hereby authorized to release on parole any convict confined in any penal institution of this Commonwealth as to whom power to parole is herein granted to said board, except convicts condemned to death or serving life imprisonment, whenever in its opinion the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby. The power to parole herein granted to the Board of Parole may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Pardon Board in a sentence which has been reduced by commutation: Provided, however, That if the Board of Parole refuse

to parole the prisoner at the expiration of any minimum term fixed by the Pardon Board, it shall, within ten days after the date when the minimum term expired transmit to the Pardon Board a written statement of the reasons for refusal to parole the prisoner at the expiration of the minimum term fixed by the Pardon Board. Thereafter, the Pardon Board may either accept the action of the Board of Parole, or order the immediate release of the prisoner on parole, under the supervision of the Board of Parole. Said board shall have the power during the period for which a person shall have been sentenced to recommit one paroled for violation of the terms and conditions of his parole and from time to time to reparole and recommit in the same manner and with the same procedure as in the case of an original parole or recommitment, if, in the judgment of the said board, there is a reasonable probability that the convict will be benefited by again according him liberty and it does not appear that the interests of the Commonwealth will be injured thereby."

summary judgment as it relates to the Weisel interview.

Concerning the Arnett detention, we have been furnished with an affidavit by Arnett in which he says that the arrest was occasioned by an incident in which a fellow tenant of plaintiff's complained that plaintiff was creating a noisy disturbance and had ripped the lock and doorknob off of his apartment door. Arnett further states that he determined that such conduct was prompted by the use of alcohol. Arnett thus arrested and detained plaintiff until a stipulation was added to his parole in which he was to refrain from consumption of alcohol.

We cannot hold under all the circumstances that Arnett, in so acting, was not acting in good faith. We will therefore grant the motion for summary judgment as to the Arnett arrest and detention.