**Susan Anne HAWK**

v.

**William S. BROSHA, Ind. and as a Detective for the County of Bucks; Stephen Shantz, Ind. and as an Assistant District Attorney of Bucks County; Joanne D. Sommer, Ind. and as an Assistant District Attorney of Bucks County; Kenneth G. Biehn, Ind. and as a District Attorney of Bucks County, Pennsylvania; and the County of Bucks.**

**Civ. A. No. 81–1860.**

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1984.

John M. McClure, Geoffrey Graham, Doylestown, Pa., for plaintiff.

Martin J. King, Cordes, King & Associates, New Hope, Pa., for defendants.

## MEMORANDUM OPINION

LOUIS H. POLLAK, District Judge.

In early summer 1978, the Office of the District Attorney for Bucks County began an investigation of complaints received by the Bucks County Department of Consumer Protection about the operations of Gibraltar Realty in Warminster, Pennsylvania. The complaints came from persons who claimed that they had paid a fee and entered into a contract with Gibraltar Realty to obtain referral information about rental properties but had either never received the information or received inaccurate information.

In the course of the investigation, it was learned that (a) a number of property owners had been contacted by representatives of Gibraltar Realty with a view to listing their properties in an effort to obtain the right to list these properties, and (b) on several occasions in which permission to list had not been obtained, Gibraltar nonetheless placed advertisements—often containing inaccurate information—in local newspapers.

As a result of these customer complaints and the investigation which followed, on August 9, 1978, the vice-president of Gibraltar, Karl Rhoads, was brought in to the District Attorney's Office and questioned. By early October 1978, one of the detectives responsible for the investigation, William S. Brosha, had compiled a lengthy report on the consumer complaints received, the interview with Karl Rhoads, and the other aspects of the investigation.

On October 25, 1978, Susan Hawk, plaintiff in the present action, was arrested and incarcerated under an arrest warrant issued earlier that month. Plaintiff was incarcerated for seven days. Soon after her release, on November 28, 1978, while charges were still pending against her, plaintiff gave a statement to the District Attorney's Office. Approximately one year later, all charges against plaintiff were dropped. Other than the arrest of one of the other employees of Gibraltar Realty, Kenneth Schumann, there have been no arrests or prosecutions with reference to the activities at Gibraltar Realty.

On May 5, 1981, plaintiff brought this action which was later amended to state claims against Bucks County and the following county officials: Detective William S. Brosha; Assistant District Attorneys Stephen Shantz and Joanne Sommer; and District Attorney Kenneth Biehn. The complaint alleges that these parties infringed plaintiff's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and, therefore, violated 42 U.S.C. § 1983. Pendent to these federal claims, plaintiff has alleged a number of state law claims including false imprisonment, false arrest, intentional and negligent infliction of emotional distress, malicious prosecution, abuse of process, negligence and gross negligence.

Following a lengthy period of discovery, all of the defendants filed a massive motion for summary judgment. That motion argues that there is no genuine issue of material fact which warrants proceeding to trial in this case. Plaintiff's response alleges that there are numerous factual issues which should be considered by a jury. Upon consideration of these arguments and the evidence marshalled on both sides of the motion, I conclude, for the reasons stated below, that defendants are entitled to summary judgment with respect to all of the federal claims and, hence, the pendent state claims as well.

### I. *Liability of Bucks County Under Monell and Its Progeny*

In 1978, the Supreme Court decided *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, in which it held that local governments may not be held liable on a theory of *respondeat superior* for constitutional violations by their employees but that "when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. at 2037. Therefore, Bucks County may only be held liable if plaintiff can show a policy or custom which is causally related to the deprivation of a constitutional right. *See e.g., Batista v. Rodriguez,* 702 F.2d 393 (2d Cir.1983).

Plaintiff alleges that there are two different ways by which this court can find the requisite policy or custom and that there are genuine issues of material fact as to the existence of such policies or customs. First, plaintiff alleges that "there existed a policy in the District Attorney's Office of Bucks County to summarily arrest, incarcerate and interrogate citizens known to be innocent of any crime for purely investigative purposes in order to obtain evidence implicating third parties charged with crimes." Plaintiff's memorandum of law at 1.

■ Defendant has submitted sworn deposition testimony from defendants Biehn, Shantz, and Sommer that no such policy or custom exists or has ever existed in Bucks County. To raise a genuine issue of material fact worthy of sending this question to trial, plaintiff must present some item of admissible evidence which suggests that such a policy exists or existed. Plaintiff has failed to do so. In support of her allegations, plaintiff relies on her own deposition testimony in which she recalls (a) rumors she heard when she worked in the courthouse, and (b) statements made to her by a former coworker, Anne Mitchell, that Ms. Mitchell's son had been arrested without just cause pursuant to this custom.

Both the rumors and the Mitchell statements are hearsay and hence inadmissible, and for that reason do not suffice to create an issue of material fact under Rule 56. C. Wright, A. Miller & M. Kane, 10A *Federal Practice and Procedure* § 2738 at 500 (1983).

■ In addition, plaintiff alleges that the county is liable due to the failure of county officers (such as the District Attorney) to supervise the activities of subordinates. "Where the actions of subordinate employees are concerned, the failure of supervisors to control their behavior may, in effect, create a *de facto* departmental policy." *Turpin v. Mailet,* 579 F.2d 152, 168 (2d Cir.1978) *vacated,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645, *modified* 591 F.2d 426 (1979). Under this theory, a county or municipality may be held liable for failure to train or properly supervise non-policy making personnel who are directly responsible for the constitutional violation. *E.g., Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979).

In the present action, plaintiff alleges that such a failure to supervise can be found because defendants Biehn and Shantz encouraged certain of their subordinates to investigate the activities of Gibraltar Realty but did not inquire into the investigation or the basis for defendant Sommer's approval of the prosecution of plaintiff. Therefore, plaintiff alleges "[d]efendants Biehn and Shantz's utter lack of concern about the impact of the investigation and determination to prosecute and their failure to properly supervise their subordinates created a custom or *de facto* policy lulling those subordinates into a belief that they could arrest, imprison and interrogate citizens such as Susan Hawk, for investigatory purposes in order to obtain evidence against third persons charged with crimes." Plaintiff's memorandum of law at 8.

■ Plaintiff is correct that it is not necessary to show a long pattern of improper conduct by subordinates in order to hold the county liable for such inaction. *Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979). However, as plaintiff recognizes, the failure to supervise must be so severe as to amount to "gross negligence" or "deliberate indifference" to the deprivation of plaintiff's rights. 601 F.2d at 1246; *Popow v. City of*

*Margate,* 476 F.Supp. 1237 (D.N.J.1979). *See also Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976). Gross negligence has been defined as "proceeding in the face of a known danger or the total disregard of potential danger." *Popow v. City of Margate,* 476 F.Supp. at No. 1243.

█ Although plaintiff argues that there is a question of fact as to whether the failure to supervise here rises to the level of gross negligence, plaintiff has presented not a scintilla of evidence to support her allegation. There is nothing in the record to show that defendants Biehn or Shantz had any reason to believe that there was a danger of violations of the rights of citizens such as plaintiff when they delegated the responsibility for the Gibraltar Realty investigation to their subordinates or at any time thereafter.

Therefore, plaintiff has failed to present evidence to show that there is any question of material fact remaining as to the existence of a "policy or custom" within the Bucks County District Attorney's Office on which county liability could be based.[1] Accordingly, summary judgment will be entered in favor of defendant, Bucks County.

## II. *Supervisory Liability of District Attorney Biehn and/or Assistant District Attorney Shantz*

Defendants argue that neither defendant Biehn nor defendant Shantz was directly responsible for the arrest of plaintiff. They had delegated the Gibraltar Realty matter to their subordinates and were not involved in the investigation, the determination of probable cause, or the arrest. In response, plaintiff argues that a factual issue remains as to whether the requisite causal connection exists between the actions of defendants Biehn and/or Shantz

and the alleged constitutional violation for liability under § 1983.

█ In order to find these supervisors liable for constitutional violations by their subordinates, plaintiff must show an "affirmative link" between the alleged misconduct and the actions of the supervisors. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The defendants must participate in the violation of plaintiff's rights by virtue of their knowledge, acquiescence, support, or encouragement. *See e.g., Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306 (3d Cir.1981).

In the face of defendants' presentation of evidence that neither Biehn not Shantz knew of, took part in, or should have known of the alleged constitutional violations, plaintiff refers to a memorandum from Shantz to Detective John Schiedt dated June 26, 1978. That memorandum requests that Schiedt give the Gibraltar Realty case priority because Biehn wanted "to know something about this by the end of the week." Plaintiff argues that this memo triggered the investigation which led to the arrest of Susan Hawk. Plaintiff then argues that this memo, which was, in part, a response to public and media pressure, when combined with the alleged failure to supervise subordinates during the investigation, provides evidence of an issue of fact as to the existence of the requisite causal connection between the supervisory defendants and the actions of their subordinates.

█ None of the evidence produced by the plaintiff creates an issue of fact sufficient to preclude summary judgment. Although the conversations of Biehn and Shantz which led to Shantz's memorandum may have put the Gibraltar Realty investigation in motion, there is no evidence to support a causal link between Biehn and

**1.** Defendants also argue that Bucks County may not be held liable because the District Attorney is under the control of the Commonwealth of Pennsylvania and not the County. Although the District Attorney may only be removed by the Governor with the advice of the Senate, he is an officer of the county in which he is elected and serves. *Schroeck v. Pennsylvania State Police,* 26 Pa.Cmwlth. 41, 362 A.2d 486, 490 (1976). For this reason, any policy or custom initiated or maintained by the District Attorney's Office would most likely be attributable to the county under *Monell.*

Shantz's actions or inactions and the alleged constitutional violations. These defendants may have known of, encouraged, or supported an investigation into Gibraltar's activities, but there has been no evidence produced to suggest that they knew of or acquiesced in the alleged violations of plaintiff's rights.

Therefore, summary judgment will be granted in favor of defendants Biehn and Shantz.

### III. *Constitutional Violation On Which Liability Of All Defendants Is Based*

The complaint alleges that defendants violated plaintiff's Fourth, Fifth, Eighth and Fourteenth Amendment rights and, consequently, 42 U.S.C. § 1983. All defendants contend that the record does not permit the inference that their conduct violated any of plaintiff's constitutional rights.

■ First, defendants urge that, although Eighth Amendment violations are alleged generally in the complaint, plaintiff has adduced no evidence to support such allegations. Although plaintiff mentions an Eighth Amendment claim in her memorandum of law on this motion, she does not describe the basis, either legal or factual, for such a claim here or in the complaint. Since no grounds for an Eighth Amendment claim have been presented, summary judgment will be granted for all defendants on such claims.

■ Second, defendants argue that plaintiff has failed to present a specific Fifth Amendment claim. Plaintiff responds that a valid due process claim exists when a plaintiff has been subjected to bodily restraint and punishment without due process in violation of her liberty interest in personal security. *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Although *Ingraham* recognizes that such a liberty interest exists, it is

apparent in the present case that any such claim is equivalent to plaintiff's Fourth Amendment claim which is the central federal cause of action asserted by plaintiff. Plaintiff has not described any conduct by defendants other than her arrest and incarceration which is claimed to have violated her rights. In particular, the section of her responsive memorandum of law which describes the basis for her claim that her constitutional rights were violated only argues that there was no probable cause to support her arrest. Therefore, if, at trial, plaintiff could not prove that her arrest and subsequent incarceration occurred without probable cause, there is no basis for finding a separate due process violation.[2]

■ Third, defendants argue that the record shows that there was probable cause for the arrest and detention of plaintiff and that, because plaintiff can show no countervailing evidence, there is no underlying constitutional violation to support plaintiff's § 1983 claims. In support of this argument, defendants refer to copies of some of the criminal complaints executed by the Office of the District Attorney against plaintiff and the investigative report on Gibraltar Realty.

The complaints against plaintiff all charge her with theft by deception, deceptive business practices, receiving stolen property, and conspiracy. The materials in the investigative report which are dated up to and on October 2, 1978 were all available to the District Attorney's Office before the execution of the complaints against plaintiff and her subsequent arrest. That report establishes that there was significant support for these charges. The report shows that the investigation of Gibraltar Realty led to evidence that persons at Gibraltar placed advertisements for rental properties in local newspapers which did not accurately describe the property or the date on which it would be available. Other

---

**2.** Plaintiff occasionally refers to a statement which she gave to the District Attorney's Office following her release from jail. Defendants note that statement was voluntarily made by plaintiff. Because plaintiff has not refuted that characterization (other than to note that charges

were still pending against her at the time that the statement was made) and has not described any constitutional violation which occurred as part of that interview, the statement is only relevant as it relates to plaintiff's arguments as to probable cause.

information in the report indicates that persons who had retained Gibraltar to obtain rental housing and who had paid for that service were not provided with the service for which they had contracted.

The report includes a transcript of an interview with Karl Rhoads, the vice-president of Gibraltar Realty, indicating that plaintiff was a telephone solicitor for Gibraltar Realty. Part of her job was to call newspapers and place the allegedly deceptive advertisements. Rhoads also said that she got in touch with property owners in order to solicit listings through Gibraltar Realty. Plaintiff was also identified in the report as the head of the two-person "service department" which matched clients to properties listed with Gibraltar. That department was also responsible for all contacts with clients following an initial, information-gathering interview with a rental counselor. Furthermore, reports of complaints from dissatisfied clients indicated that plaintiff had dealt with their telephone complaints and had been responsible for providing or failing to provide clients with information.

Although the materials compiled in the investigative report also showed that plaintiff did not compose the advertisements or directly receive the service contract fee paid by all clients, they create a picture which supports the District Attorney's Office finding of probable cause. Plaintiff was known to the District Attorney's Office, on the basis of a substantial investigation, as the head of the department at Gibraltar Realty which sought out both landlords and clients. This department was small and plaintiff was apparently actively involved in all of its duties. Since that department acquired the information for all advertisements and placed them, there was evidence that plaintiff would naturally be aware of the alleged misrepresentations although she did not compose the exact form of the advertisement. Furthermore, since the service department was responsible for matching clients to properties and for fielding complaints, any failure to fulfill the contract between Gibraltar Realty and its clients would stem directly from service department activities.

In sum, the investigative report shows that the District Attorney's Office had substantial grounds to believe that plaintiff had directly taken part in the crimes charged or could be held liable for these crimes under a conspiracy theory. Although the information in the report might not support a conviction, it contained sufficient "facts and circumstances ... of which [the District Attorney's Office] had reasonably trustworthy information, ... to warrant a prudent man in believing that the [plaintiff] has committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

To show that there exists an issue of material fact as to whether the defendants had probable cause to support the arrest, plaintiff also refers to the investigative report. She attempts to recharacterize the facts known to defendants to show that the defendants should have realized that she was a minor employee and not a direct participant in any illegal activities. However, as noted above, that report, standing alone, supports a finding of probable cause which is not undermined by the portions referred to by plaintiff.

Plaintiff also refers to portions of her own deposition, taken after this suit was filed, to show that she did not possess the requisite intent for the crimes charged. Although plaintiff's deposition disavows any knowledge of illegal activities at Gibraltar Realty, there is no indication that this was known to defendants at the time of plaintiff's arrest. Therefore, it does not create a genuine issue of fact in the face of defendants' evidence of probable cause.

As further evidence of a lack of probable cause, plaintiff refers to her interview with the District Attorney's Office following her release from incarceration, the fact that charges against her were dropped in 1979, and the fact that only one other employee and none of the principals of the business was ever arrested. The transcript of the interview does not suggest that the District Attorney's Office felt that it could not take its case against plaintiff to court. Her

lawyer states that the interview is her effort to come "forth to cooperate and not in effect to give a statement to be used in any trial because a trial is not anticipated, assuming the cooperation is here." Although it appears that a trial was not then anticipated in the case against plaintiff, this was apparently due to her cooperation in that interview, as shown by her attorney's statement. There is no indication in that interview that at the time of plaintiff's arrest or during her incarceration any of the defendants believed that there was no probable cause for plaintiff's arrest or knew of any information which would suggest that the original finding of probable cause was error. Similarly, the failure to prosecute others involved with Gibraltar Realty or the decision to *nol pros* the charges against plaintiff does not refute the defendants' evidence of probable cause.

Therefore, plaintiff has provided no evidence in response to this motion to show that at the time of arrest or incarceration defendants had any knowledge which would undercut the finding of probable cause. Since there is no evidence of a genuine issue of material fact as to the existence of probable cause to arrest and incarcerate plaintiff, summary judgment is warranted in favor of all defendants.

### IV. *Immunity From Civil Liability Under § 1983*

Even if there should be some doubt as to the appropriateness of summary judgment on the grounds discussed above, summary judgment for all defendants is appropriate due either to absolute prosecutorial immunity or to qualified good faith immunity. Section 1983 "is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976).

The Supreme Court has held that a public prosecutor is absolutely immune from suit under § 1983 for acts such as the initiation of a prosecution and presentation of the state's case which are "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430, 96 S.Ct. at 995. Furthermore, the Third Circuit Court of Appeals has determined that such absolute immunity extends to a prosecutor's efforts to secure information necessary to his decision to initiate a criminal prosecution. *Forsyth v. Kleindienst*, 599 F.2d 1203 (1979).

However in other circumstances only qualified immunity is available. A public prosecutor is not entitled to absolute immunity when performing administrative or investigative duties. *See Forsyth v. Kleindienst, supra.* In such activities, a prosecutor, like a detective, is a governmental official performing a discretionary function which entitles him to only qualified immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Therefore, to the extent that defendants are not protected from suit by absolute immunity, they may raise the defense of qualified immunity which requires an evaluation of the objective reasonableness of their actions in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[3]

Defendants Biehn, Shantz and Sommers are all potentially protected by absolute prosecutorial immunity. They would only be allowed qualified immunity if the liability-producing acts in the present case stemmed from administrative or investigative actions by them. Although some of these defendants may, arguably, have participated in or instigated the investigation of Gibraltar Realty prior to the arrest of plaintiff, there are no allegations that plaintiff's constitutional rights were in any manner infringed by the investigation of Gibraltar Realty except to the extent that the investigation led to plaintiff's arrest. The only claimed violation of plaintiff's constitutional rights occurred when complaints were executed against her by the Office of

---

**3.** The objective test facilitates the resolution of insubstantial claims on summary judgment without the need for a trial. *See* 102 S.Ct. at 2737; *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

the District Attorney which led to her arrest and incarceration. These activities of public prosecutors fall squarely within the range of actions related to the initiation of a criminal prosecution which are protected by absolute immunity under *Imbler* and *Forsyth. See e.g., Iseley v. Bucks County,* 549 F.Supp. 160 (E.D.Pa.1982); *Wilkinson v. Ellis,* 484 F.Supp. 1072 (E.D.Pa.1980).

Even if these defendants were not afforded absolute immunity, they would have grounds for summary judgment under the qualified immunity of *Harlow.* Summary judgment would be warranted under that standard if plaintiff does not rebut defendants' showing that their conduct was objectively reasonable. Defendants have established that their conduct in issuing complaints against plaintiff was objectively reasonable under the circumstances. The evidence they have mustered in support of their claims that probable cause existed for the arrest shows that the decision to execute the complaints was reasonable under the facts as then known to them. As discussed in the previous section of this Memorandum Opinion, plaintiff has not provided evidence which raises a question as to the reasonableness of these actions. Therefore, defendants Biehn, Shantz and Sommers are entitled to immunity from this suit.

Defendant Brosha, a county detective, does not have prosecutorial immunity but does possess qualified immunity. Therefore, if Brosha's actions related to plaintiff's arrest were objectively reasonable, he too is entitled to immunity. Under the facts presented by the defendants, Brosha's actions were reasonable not only in light of the strong evidence of wrongdoing in the investigative reports but also due to the fact that his investigation was conducted upon the request of the District Attorney's Office. He did not take part in the probable cause determination and he relied upon the decision made by the attorneys in the District Attorney's Office that plaintiff should be arrested. Plaintiff has brought forth no evidence that Detective Brosha had particular knowledge about the case which would have made his reliance upon the conclusions of these attorneys unrea-

sonable. Thus, summary judgment will be granted for defendant Brosha due to his immunity from suit.

Due to the decisions with reference to the federal causes of action, this court will follow the direction of the Third Circuit in *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976) and refrain from exercising pendent jurisdiction since there exist no extraordinary circumstances to warrant such jurisdiction.