Buck JONES

v.

EAGLEVILLE HOSPITAL AND REHA-
BILITATION CENTER, Donald J. Ot-
tenberg, Martha Waters, Charles Fran-
cis and Pennsylvania Board of Proba-
tion and Parole.

Civ. A. No. 83–3235.

United States District Court,
E.D. Pennsylvania.

June 20, 1984.

Buck Jones, pro se.

Howard R. Flaxman, Philadelphia, Pa., for Eagleville, Waters, Ottenberg and Francis.

Mary E. Butler, Deputy Atty. Gen., Philadelphia, Pa., for Parole Bd.

## MEMORANDUM AND ORDER

LOUIS H. POLLAK, District Judge.

Plaintiff Buck Jones brought this action *pro se* under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Mr. Jones is incarcerated at the State Correctional Institution at Graterford. His amended complaint alleges that in April or May, 1983, the Pennsylvania Board of Probation and Parole ("Parole Board") informed Mr. Jones that he could be released on parole on condition that he complete a 45 day in-patient drug treatment program at Eagleville Hospital and Rehabilitation Center ("Eagleville"). Amended Complaint ¶ 1. Mr. Jones further claims that the Parole Board's operations placed him "under the supervision, jurisdiction and authority of the employees, staff members and counselors ... of Eagleville, and that any disobedience of the same would result in the immediate revocation" of Mr. Jones' parole. Amended Complaint ¶ 2; *see also Id.* ¶ 6.

Mr. Jones claims that he moved to Eagleville. On the morning of June 10, 1983, Mr. Jones claims that he attended a "community meeting" at Eagleville. At the time, Mr. Jones was wearing a kufi, a skullcap worn by Islamic men.[1] Mr. Jones claims that defendant Charles Francis, an employee of Eagleville, approached him and that Mr. Francis ordered Mr. Jones to remove his kufi. Mr. Jones claims that he explained the religious significance of the skullcap. At this point Mr. Jones claims that Mr. Francis demanded that Mr. Jones either remove his kufi or leave the grounds. *Id.* Mr. Jones claims that he requested that his parole agent be summoned to aid in the resolution of this dispute. His parole agent arrived, but did not mediate the dispute, according to Mr. Jones. Instead, the parole agent took Mr. Jones into custody. *Id.* ¶ 7. After a preliminary hearing, Mr. Jones' parole was revoked and he was returned to Graterford.

Mr. Jones sued Eagleville, several of Eagleville's employees,[2] and the Parole Board for violations of his right to free exercise of religion as guaranteed by the Fourteenth Amendment, as well as certain alleged procedural due process violations involved in his parole revocation. Defendants moved to dismiss Mr. Jones' complaint. I referred this matter to a magistrate for preparation of a report and recommendation. The magistrate recommended that I grant the Parole Board's motion to dismiss with prejudice and the Eagleville defendants' motion to dismiss without prejudice. Plaintiff filed objections to the report and recommendation, defendants responded, and plaintiff replied. I will therefore consider these motions *de novo*.

■ The magistrate's recommendation that I dismiss the complaint against the Parole Board is clearly correct. "The Board, of course, cannot be sued for it is not a 'person' within the meaning of Section 1983." *Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir.1977); *see also Gahagan v. Pennsylvania Bd. of Probation & Parole*, 444 F.Supp. 1326, 1333 (E.D.Pa.1978). Therefore, the accompanying Order will grant the Parole Board's motion to dismiss.

The Eagleville defendants have moved to dismiss this complaint contending that plaintiff has not sufficiently alleged that their activities constituted "state action" for purposes of the Due Process Clause of the Fourteenth Amendment and that plain-

---

1. For purposes of this motion to dismiss, I take as true plaintiff's assertion that the wearing of a kufi has religious significance. Our Court of Appeals has addressed the extent to which prison officials may restrict the wearing of a kufi, *see St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir. 1980); *see also St. Claire v. Cuyler*, 643 F.2d 103 (3d Cir.1980) (Adams, J., with whom Seitz, Gibbons, Higginbotham, and Sloviter, JJ. join, dissenting from denial of rehearing en banc).

2. I shall refer to the hospital, Donald J. Ottenberg, Martha Waters, and Charles Francis as "the Eagleville defendants."

tiff has not alleged that any deprivation was "under color" of state law for purposes of 42 U.S.C. § 1983. The magistrate recommended that I grant Eagleville defendants' motion on this ground. I find that plaintiff has sufficiently alleged "state action" and I will therefore deny defendants' motion to dismiss.

■ Plaintiff has alleged a violation of 42 U.S.C. § 1983 predicated upon the deprivation of his liberty interest without due process of law. U.S. Const., am. XIV. His complaint must allege three elements adequately to state such a claim. First, plaintiff must allege that he has suffered some "deprivation of ... rights, privileges, or immunities secured by the Constitution and laws ...." 42 U.S.C. § 1983. Second, this deprivation must have been accomplished without according plaintiff due process of law. U.S. Const., am. XIV. Finally, plaintiff must allege that the defendant has worked this deprivation "under color" of state law. 42 U.S.C. § 1983. This last element overlaps exactly with the Fourteenth Amendment's requirement that plaintiff allege that the "state" has deprived him of a liberty or property interest without according him due process. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Jackson v. Temple University*, 721 F.2d 931, 932–933 (3d Cir.1983); *Community Medical Center v. Emergency Medical Services*, 712 F.2d 878, 879 n. 3 (3d Cir. 1983); *Baksalary v. Smith*, 579 F.Supp. 218, 225–226 (E.D.Pa.1984) (three judge court).

■ The Eagleville defendants predicate their motion to dismiss solely upon a failure of plaintiff properly to allege state action. I will therefore not address the sufficiency of plaintiff's allegations of the other two elements of his section 1983 claim.

The state-action inquiry mandated by the Fourteenth Amendment and section 1983 presents a particularly difficult problem. The Constitution and section 1983 protect the individual from invasive governmental activity, but not from invasive private activity—the latter, if remediable in courts of law, is generally addressed by the law of torts and/or the law of crimes. But the compartments of governmental and private activity are not hermetically sealed and distinct from one another. In our complex society, heavily regulated but bottomed on the centrality of individual initiative and responsibility, much activity has both a public and a private aspect. Governmental activity is legitimate only to the extent that private actors—the citizenry, who are sovereign—acquiesce in it. Private activity is legitimate only to the extent that the citizenry, through government, impose no restraints on that activity. Moreover, governmental activity is carried out by persons who are also in some measure private actors.

To aid in systematic application of state-action principles from one case to another, courts have moved away from a direct inquiry into the "publicness" or "privateness" of an individual exercise of power. The Supreme Court, in particular, has attempted to articulate a series of "tests." Our Court of Appeals has recently reviewed those tests. *See Community Medical Center v. Emergency Medical Services of Northeastern Pennsylvania, Inc.*, 712 F.2d 878, 880 (3d Cir.1983). These tests' application may at times appear wooden; but over time—as in other areas of developing case law—it is not unreasonable to expect that utilization of these tests to assess particular instances will expand our understanding of the implicit jurisprudential premises underlying the tests. *Compare Baksalary*, 579 F.Supp. at 232 n. 21.

While I do not hold that plaintiff may not be able to support a finding of state action under any other test enunciated by the Supreme Court, the "close nexus" analysis propounded in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), seems particularly applicable to this case. The Court has since stated that this mode of analysis consists of two parts:

First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Lugar v. Edmondson Oil Co.,* 457 U.S. at 937, 102 S.Ct. at 2754; *Cruz v. Donnelly,* 727 F.2d 79, 81 (3d Cir.1984); *Baksalary,* 579 F.Supp. at 227.

In applying *Lugar's* explication of *Jackson's* analysis, reference to the closely analogous case of *Cruz v. Donnelly,* 727 F.2d 79 (3d Cir.1984), proves useful. In *Cruz,* plaintiff alleged that two police officers detained and strip-searched him at the instance of a storeowner who suspected the plaintiff of shoplifting. Plaintiff in *Cruz* sued the storeowner. The *Cruz* court found *Lugar's* first prong satisfied "since all the alleged deprivations were committed by West Chester police officers exercising their investigative powers—'a person for whom the state is responsible.'" 727 F.2d at 81. So, in this case, at least the deprivation of Mr. Jones' liberty interest in freedom from physical restraint alleged in the complaint was committed by parole agents, persons for whom the state is responsible.

In *Cruz,* the court found that plaintiff had not satisfied the second prong of *Lugar.* Plaintiff had to allege that "(1) the police have a pre-arranged plan with the store; and (2) under the plan, the police will arrest anyone identified as a shoplifter by the store without independently evaluating the presence of probable cause." 727 F.2d at 81. The Court of Appeals went on to state that "*Lugar* teaches that at least when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983." 727 F.2d at 82; *see also*

*Fishman v. De Meo,* 590 F.Supp. 402 at —— (E.D.Pa.1984).

Plaintiff has alleged such a system permitting private parties to substitute their judgment for that of a state official or body. The complaint alleges "[t]hat the parole agents informed plaintiff [that] while [at] the program at Eagleville he would be under the supervision, jurisdiction and authority of the employees, staff members and counselors, etc., etc. of Eagleville, and that any disobedience of the same would result in the immediate revocation of his parole." Amended Complaint ¶ 2. I therefore conclude that the Amended Complaint satisfies *Lugar's* second prong as elucidated by *Cruz.*[3]

Because the magistrate decided that plaintiff had not adequately alleged state action, he did not reach defendant Martha Water's contention that the complaint does not state a section 1983 claim against her. Ms. Waters serves as president of Eagleville. The complaint does not allege that Ms. Waters had any participation in or knowledge of the events upon which Mr. Jones bases his claims. The complaint merely states that Ms. Waters "is directly responsible for the day-to-day operation [of Eagleville] as well as the orderly administration of all staff and employees under her direct charge." Amended Complaint, p. 3.

Plaintiff has only alleged enough to make Ms. Waters liable on a *respondeat superior* theory. Section 1983 does not permit imposition of liability on this ground. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976). Plaintiff must allege an "affirmative link" between the alleged misconduct and the actions of the supervisors involving the supervisor's knowledge, acquiescence, support, or encouragement. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46

---

**3.** This conclusion depends on a reading of paragraph 2 of the Amended Complaint to allege that the Parole Board had abdicated all of its discretion to Eagleville. This narrow difference with the magistrate leads to a different result on

this motion to dismiss because a motion to dismiss tests only the legal sufficiency of the complaint. Although plaintiff has made legally sufficient allegations, substantiating those allegations presents a formidable task.

L.Ed.2d 561 (1976); *Commonwealth of Pennsylvania v. Porter,* 659 F.2d 306 (3d Cir.1981); *Hawk v. Brosha,* 590 F.Supp. 337 at 341 (E.D.Pa.1984). Therefore, the complaint, even as amended, does not state a claim against Ms. Waters upon which relief may be granted.

For the foregoing reasons, the accompanying Order will grant the Parole Board's motion to dismiss with prejudice, deny the motions to dismiss of the Eagleville defendants other than Ms. Water, and grant Ms. Water's motion to dismiss without prejudice. This ruling as to the Eagleville defendants is, of course, without prejudice to the Eagleville defendants' right to move to dismiss any particular claims for reasons other than a failure to plead the requisites of state action.