Doerfer, J.
Plaintiff, Stefanie Showell (Showell), brings this action against the defendant, Trustees of Boston University (Boston University), seeking damages for allegedly unfair academic practices by Boston University. Specifically, Showell contends that she was deceptively induced to enroll in Boston University (Count I); breach of contract (Count II); and violation of G.L.c. 93A (Count III). Showell moves to amend her complaint to add a substantive due process count (Count IV). Boston University moves to dismiss all counts pursuant to Mass.R.Civ.P. 12(b)(6).[1] Boston University also moves to strike Paragraph 34 from Showell’s complaint. For the following reasons, the defendant’s motion to dismiss is allowed and the plaintiffs motion to amend is denied. Since the complaint is dismissed the court does not need to rule on defendant’s motion to strike.
BACKGROUND
For purposes of this motion, the court takes all the factual allegations in Showell’s complaint as true.
In March 1990, Boston University sent Showell notification that she was accepted to enroll at Boston University. (Complaint, ¶4, exhibit A.) Showell accepted Boston University’s offer of admission. Showell *369 entered into the Master of Science Physical Therapy (MSPT) program and started the program in the fall semester of 1990. (Complaint, ¶6.) The MSPT program permitted Showell to receive her Bachelor of Science degree in physical therapy in four years and a Master’s degree at the end of the fifth year. Id. at ¶6-8, 38. Upon entering the program, Showell successfully completed three years of the combined core curriculum. Id. at 7.
In the summer of 1993, Showell began her first year of professional study by taking a course in Functional Anatomy (PT 520). Id. at 8. Upon entering the Functional Anatomy course, Showell received and read the course outline. Id. at 9.
The Functional Anatomy course outline reads in relevant part:
Course Evaluation: Group Exam Grade, 25% (average of two group exams); Midterm Exam, 35%; Final 40%
Students must have an average of 70 or better on the midterm exam and Final in order to receive a passing grade for the course. Failure to attain an average of 70 or better will result in a failing grade regardless of the group exam grade . . .
(Complaint, exhibit D.)
Showell received a cumulative grade of 73 in Functional Anatomy, but her average score on the midterm and final exam was below 70 percent. As a result, Showell received a letter grade of C-. She was unable to continue her professional education in courses that required a passing grade of C in Functional Anatomy as a prerequisite.
At no time prior to her admission into the MSPT program was Showell informed that Functional Anatomy would be a prerequisite for continuing professional classes. Showell also was not informed until the summer of 1993 that the grading system for Functional Anatomy differed from the University’s grading policy and procedure. In addition, Boston University did not inform Showell until the fall of 1993 that Functional Anatomy was only offered once a year in the summertime.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, as well as any inference which can be drawn from those allegations in the plaintiffs favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); See also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whitinsville Plaza Inc. v. Kotseas, 378 Mass. 85, 89 (1979). A complaint should not be dismissed simply because it asserts a new or extreme theory of liability or improbable facts. New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28 (1988).
I. False inducement to Contract (Count I) and breach of Contract, (Count II).
Showell contends that when Boston University offered her admission into the MSPT program, the school’s handbooks and manuals informed her that she would be able to receive a Bachelor of Science degree and a Master of Science degree in Physical Therapy within five years “if she fulfilled the requirements.” (Complaint, ¶38.) Showell asserts that Boston University failed to inform her of the following requirements:
1) that Functional Anatomy would be a prerequisite for all classes offered during her first year of professional study;
2) that Functional Anatomy is only offered once a year during the summer;
3) that the grading structure for Functional Anatomy is significantly different than Boston University’s grading policy and procedure.
Under Count I, Showell alleges that during the admission process, Boston University failed to inform her of the above requirements in order to falsely induce her into entering an educational contract in which she would accept Boston University’s offer of admission and pay tuition to Boston University. As a result, Showell argues that University’s failure to inform her of these requirements deceived her into believing she could earn her degrees in five years. Under Count II, Showell alleges that Boston University breached its contract to educate Showell in a timely manner by failing to inform her of requirements to complete the program on time. Both Count I and II are based on contract law and what effect the University’s “failure to inform” would have on such a contract. Because the Counts are based upon the University’s “failure to inform,” the court examines the claims together.
In Moire v. Temple University School of Medicine, 613 F.Supp 1360, 1376 (D.C. Pa. 1985), the court stated that if admission into a professional school creates an implied or express contract, its academic requirements and promotional guidelines are implied terms of the agreement. A student who accepts an offer to attend a professional school is bound by the academic requirements and promotional guidelines of the university that were already in effect when the student was admitted. Id. Since the academic requirements and promotional guidelines were already in effect when the plaintiff in Moire enrolled, the court’s ruling infers that the school’s requirements were readily available to the plaintiff if the plaintiff had chosen to inquire.
Furthermore, a student cannot claim that a university breached the contract where the grading policy is effectively conveyed to the student and the school *370 catalog sets out the right of the university to determine academic requirements and promotional guidelines. See Essigmann v. Western New England College, 11 Mass.App.Ct. 1013, 1014 (1981) (assuming that even if the student-university relationship created a contract, the school did not breach implied terms of the agreement by refusing to confer a juris doctor degree on the plaintiff where 1) the plaintiff failed to achieve the minimum grade point average for bestowal of that degree; 2) the grading policy was effectively conveyed to the plaintiff on semester grade reports; and 3) the school catalog reserved the school’s right to eliminate courses the plaintiff sought to retake to improve his grade point average). The ruling in Essigmann places much emphasis on the fact that the plaintiff had knowledge of the grading policy and that the plaintiff had at least constructive knowledge, through the school’s catalog, that the school could change course offerings that might interest the students. Since the plaintiff had knowledge of these matters, there was no breach of any contract terms between the student and the school.
In accordance with Moire and Essigmann, Showell can only prevail against Boston University if the requirements surrounding Functional Anatomy were not in effect when she decided to enroll in Boston University and the University did not reserve the right to implement such requirements after Showell began her education. The complaint does not allege, and no reasonable inference can be drawn that the requirements surrounding Functional Anatomy were not in effect when Showell became a student of Boston University. Furthermore, the complaint does not allege that Boston University had not reserved the right to change the curriculum requirements. Showell’s complaint fails to allege any facts which would entitle her to relief under Count I or II. See Eyal, supra at 429-31 (plaintiff must allege enough to meet each element of the claim).
II. G.L.c. 93A, (Count III).
Showell’s G.L.c. 93A claim is based upon the University’s failure to inform Showell. Showell’s G.L.c. 93A claim is directly related to Counts I and II. Since Counts I and II do not state a claim for which relief can be granted, Count III must also fail.
IV. Motion to Amend— Substantive Due Process.
Showell seeks to amend her complaint to add a substantive due process claim against Boston University. Showell contends that she has a constitutionally protected Liberty and/or property interest in the pursuit of a Masters of Science degree in Physical Therapy. Showell asserts that Boston University acted in an arbitrary and capricious manner in not allowing her to continue with her professional education after not passing Functional Anatomy.
The Fifth and Fourteenth Amendments protect individuals only from governmental action. Krynicky v. University of Pittsburgh, 742 F.2d 94, 97 (1984). In order for Showell to benefit from these constitutional protections, there must be a showing that the alleged violations of due process are “fairly attributable to the state.” Id. Showell has failed to allege any state action in her complaint. There is no allegation that would infer that the conduct of Boston University is fairly attributable to the state. See Jones v. Eagleville Hosp. & Rehab. Center, 588 F.Supp. 53, 55 (E.D. Penn. 1984) (plaintiff must allege that the “state” has deprived him of a liberty or property interest without according him due process). Notwithstanding the liberality of Rule 15(a), “a judge properly may deny a motion to amend because the complaint as amended would fail to state a claim on which relief could be granted.” Bass River Lobsters, Inc. v. Smith, 7 Mass.App.Ct. 197, 198 (1979), citing Jessie v. Boynton, 372 Mass 293, 295 (1977). Accordingly, Showell’s motion to amend her complaint to add a due process count is denied because the amendment does not allege any action by Boston University attributable to the state.
Since the complaint is dismissed, the court need not address the defendant’s motion to strike Paragraph 34.[2]
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to dismiss Counts I, II, and III is ALLOWED. It is further ORDERED that the plaintiffs motion to amend the complaint is DENIED.

 Boston University alternatively requests that the court consider affidavits it has submitted and treat this motion as one for summary judgment. After hearing oral arguments, for purposes of this motion the court considers only the sufficiency of the complaint and the exhibits attached to the complaint.

 Paragraph 34 of Showell's complaint states that she is the only black student who entered the program in 1990 who had an opportunity to graduate in 1995. Paragraph 34 also states that all the remaining black students who began the program with Showell were either forced to attend an additional year or they were discouraged from continuing the program. Boston University seeks to strike this paragraph from the complaint pursuant to Mass.R.Civ.P. 12(f). Rule 12(f) allows either party to move to strike any immaterial matter from the complaint. Showell’s counsel admitted in oral argument that he did not have a claim based on racial discrimination. Accordingly, Showell’s reference to her race and the race of other members of the program is immaterial because such matters are irrelevant to plaintiffs contract claims and G.L.c. 93A